[Civ. No. 22032.   Second Dist., Div. Three.   May 27, 1957.]

W. J. MARINUCCI, Respondent, v. RICHARD BRYANT et al., Appellants.

Edward H. Blixt for Appellants.

Robert S. Butts for Respondent.

SHINN, P. J.—As the aftermath of a brawl in a barroom, Mr. Marinucci brought suit against Mr. Bryant, seeking compensation for personal injuries, consisting of fractured bones and sprained tendons in one of his legs; by cross-complaint Mr. Bryant sought damages for his injuries, consisting principally of a cut lip and an injured fist, and Mrs. Bryant also sued for compensation, claiming physical and mental suffering as a result of a pinch allegedly administered by Mr. Marinucci. Verdict and judgment were in favor of Mr. Marinucci in the sum of $10,000 and the Bryants appeal.

All was quiet and peaceful when the encounter took place at about 1:30 a.m. in the Cock'n Bull, where the parties regularly foregathered with numerous others, in the late hours, to participate in songfests led by Rudy, the bartender, a tenor. The singing had subsided and most of the patrons had departed. Marinucci was a foreman in the erection of structural steel and a writer of novels and short stories. His weight was 190, his height 6 feet 3. For a year and a half he had patronized the Cock'n Bull weekly in the hope of finding someone who would purchase his writings. Mr. Bryant was a salesman. His size was not disclosed. Marinucci and the Bryants were slightly acquainted. They were seated on stools at the bar, drinking; other patrons seated at tables had been served with food. Mr. Bryant, after walking about, retired from the room and was absent about five minutes. Mr. Marinucci, who had had "a couple of drinks, anyhow," left his stool and approached that of Mrs. Bryant, who had had only two drinks. He testified that he was going to leave. Remarks of a casual and innocuous nature passed between Mr. Marinucci and Mrs. Bryant; nothing offensive was said by either, but, according to Mrs. Bryant, she did not enjoy having Mr. Marinucci around, and requested him to go away. Instead of complying Mr. Marinucci pinched her where she sat, which caused her to jump, but not to arise. This Mr. Marinucci firmly denied. Mr. Bryant appeared and questioned whether Mr. Marinucci was giving Mrs. Bryant a bad time, and when she answered in the affirmative, the combat started. Each participant accused the other of having struck the first blow. Mr. Marinucci

wound up on the floor. He testified that Mr. Bryant grabbed one of his legs, twisted it, bent it and came down upon it with all his weight, which Mr. Bryant denied. The injuries, however, were severe. They necessitated surgical treatment, including the use over a period of weeks of a plaster cast. Mr. Bryant suffered a cut lip and injured his fist. Mrs. Bryant testified that the pinching was painful; when she got home she observed two "finger marks" on her left buttocks and the following day they had turned purple; they remained for a couple of weeks and she suffered pain when she sat down hard. She received no medical attention for her injuries.

The points on the appeal are the following: (1) There was irregularity in questioning one of the jurors whether he understood the verdicts; (2) the questioning of Mrs. Bryant by her counsel as to her reasons for telling Mr. Marinucci to go away was unduly restricted; (3) the evidence was insufficient to justify the verdict; (4) the jurors were improperly permitted to separate from Friday until Monday; (5) there was an insufficient pleading of the items of special damages; (6) the court should have granted a new trial upon the ground of newly discovered evidence and misconduct of jurors.

On Friday afternoon the jurors had not agreed upon a verdict. They requested to be reinstructed in the law relating to punitive damages and the instructions were reread. At 5:30 p.m., a verdict had not been agreed upon and the court allowed the jurors to separate until Monday morning. ■ On Monday morning a judge, other than Judge Huls, was presiding. After an hour's deliberation the jurors returned three verdicts. One was in favor of plaintiff against Richard Bryant in the sum of $10,000, compensatory damages. When polled as to this verdict, eight jurors answered "yes" and four answered "no." The jury was polled again, still with four negative answers. Juror Berest answered "no" and Mrs. Bean (No. 7) stated that in the jury room he had answered "yes." Juror Berest stated that he understood that he voted "no on punitive damages" and asked whether he had made a mistake. The court explained that the verdict was for $10,000 compensatory damages and the juror said: "Then I voted yes in that case. I didn't understand it was on the question of punitive damages only." His vote was changed from "no" to "yes" and the verdict was received. The clerk then read a second verdict in favor of Marinucci and against Richard Bryant on the latter's cross-complaint. Mr. Berest was confused but when the verdict was explained voted "yes." The vote being nine to three, the verdict was received.

The clerk then read the verdict on the cross-complaint of Lillian Bryant which read that it was for "cross-defendant W. J. Marinucci and against cross-complainant Lillian Bryant." Mr. Berest was still confused and the court asked him: "Well, did you vote in favor of either of the defendants and cross-complainants Bryant to receive anything? JUROR No. 3: Against *cross-defendant* Bryant to receive any punitive damages." The court then stated: "Well, as I understand it, the two defendants filed cross-complaints, so they have cross-claims against the plaintiff. In that respect they, in effect, occupy the position of plaintiffs against the plaintiff who, in effect, is a defendant. They are called cross-complainants, that is, the defendants, and the plaintiff is called a cross-defendant. Now, do you understand that? JUROR No. 3: Yes. THE COURT: In this instance this verdict is in favor of the cross-defendant and against the cross-complainants. This means that this verdict awards the defendants on their cross-claim, in which they are the cross-complainants, nothing as against the cross-defendant, who is the plaintiff. JUROR No. 3: In other words, nothing is for whom, exactly?" Caught unawares by this surprising lack of understanding of the court's painstaking explanation, the court stated: "Nothing for either of the defendants. This particular verdict names which cross-defendant? THE CLERK: Cross-defendant is W. J. Marinucci. THE COURT: I mean *cross-complainant*. THE CLERK: The cross-complainant in this one we are polling is Lillian Bryant." As a last and late resort the court had Mrs. Bryant and Mr. Marinucci stand and explained which one was the cross-complainant and which the cross-defendant. When it was ascertained that the juror was voting that the lady who was standing would not get anything against the man who was standing, the third verdict was received.

Appellants say the jurors should have been sent back to the jury room. They rely upon section 618 of the Code of Civil Procedure which provides in part that if "more than one-fourth of the jurors disagree thereto, the jury must be sent out again, but if no such disagreement be expressed, the verdict is complete and the jury discharged from the case." The section is to be read with section 619: "When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out." There was no real disagreement. Juror Berest was confused by the use of the terms "cross-complainants" and "cross-de-

fendant'' and the court's explanation that in one aspect of the case the plaintiff was the defendant and the defendants were the plaintiffs. When the juror could forget those terms, and the court's elucidation of them, which was the sole cause of his confusion, and could identify the litigants in person, he had no difficulty in making it clear that he was on the side of Mr. Marinucci and against Mrs. Bryant. It was the duty of the court to ascertain the cause of the juror's confusion and to explain the meaning of the verdict. It is problematical whether this could have been accomplished without the assistance of the court. The questioning by the court was entirely proper.

The incident is of interest to us for the reason that it illustrates the difficulty the lay mind encounters in the comprehension of legal phraseology. The need for clarity and simplicity exists whenever it is the duty of the court to give assistance to jurors in the performance of their duties. The incident should also be of some interest to those naive composers of involved statements of legal principles who theorize that jurors have the mental capacity to understand and keep in mind not only the basic principles but also the finespun legal distinctions in as many as 81 instructions in a simple case. (See, *Butigan* v. *Yellow Cab Co.*, (\*Cal.App.) 310 P.2d 132.)

The next point is that defendants were not allowed to offer evidence as to Mrs. Bryant's reasons for requesting Marinucci to go away. On cross-examination she had testified that she had had only general conversations with him before the night in question, and that she had not addressed him on that occasion before he had spoken to her; also that there had not been any prior difficulties between them. On redirect examination counsel for defendants questioned her as to what she had observed of former conduct of Marinucci at the same bar and also at the home of her mother. Plaintiff's objection was sustained. Defendants' counsel then offered to prove that she had seen Marinucci put his arms around women and ''molest them by conversation'' and ''that the fellow is more or less of a buttinsky—he butts into all groups and conversations—and that he is known as being a freeloader, that is, a fellow who gets into parties to get free drinks, and that is the reason she asked him to leave.'' The purpose of the offer was to rebut any impression that Mrs. Bryant had been rude

---

*A hearing by the Supreme Court was granted on June 19, 1957.

toward Mr. Marinucci. Plaintiff objected to the offer of proof upon the ground that it would bring in issue Marinucci's character in a manner prejudicial to him. The court stated: ''It is sufficient that she told him to go away, she didn't want him there, and that is the only material thing, as I see it, at the moment. The offer is rejected.'' The trial court was also of the opinion that evidence that Marinucci was possessed of extroversive propensities to the extent so lucidly described by counsel might create prejudice against him; and it is apparent that it would have had that effect in the mind of anyone who held to higher standards of barroom etiquette than those sought to be attributed to Mr. Marinucci. The court properly refused to permit the trial of the collateral issue of Mr. Marinucci's former allegedly indiscreet behavior. Moreover, if the jurors had believed Mrs. Bryant's testimony, Mr. Marinucci would have been portrayed as a distinct nuisance in a barroom. If they had disbelieved it they would not have been impressed by her testimony that he fitted her counsel's unflattering description of him. The offer was properly rejected.

The next contention is that the evidence was legally insufficient to prove that Bryant was the aggressor or that he inflicted the injuries which plaintiff described. Marinucci testified explicitly to the extent of the injuries and the manner in which they were inflicted. That was legally sufficient.

There is no merit in the contention that the court was in error in permitting the jurors to separate from Friday night until Monday morning. The matter of the adjournment and separation of the jurors was discussed openly, the jurors expressed a desire to go home, and counsel in the case stated no objection. Their silence was the equivalent of express consent to the separation of the jury. The contention that error was committed cannot be raised on appeal when no objection was made during the trial. And it has been held that the mere separation of the jury after the submission of the case does not require a reversal of the judgment. (*McDowd* v. *Pig'n Whistle Corp.*, 26 Cal.2d 696 [160 P.2d 797].)

Appellants' next point is that the verdict for $10,000 no doubt included an award of special damages and that the same could not be recovered because of insufficiency of the allegations of the complaint. The complaint alleged that plaintiff had incurred liability for medical expenses and services to the date of the commencement of the action and would be liable for further expense of the same nature, the amount thereof being unknown. In the complaint recovery was asked

for medical expenses incurred and to be incurred. The complaint was not amended to state a specific amount, but evidence of the items of plaintiff's special damages was introduced without objection, and no objection was made to the submission of the issue of special damages to the jury under appropriate instructions. The point may not be raised for the first time on appeal.

■ The final contention is that the court should have granted appellants' motion for a new trial on the ground of newly discovered evidence and misconduct of the jury. On the motion for new trial appellants filed affidavits of Richard Wright and Larry Crosby stating that they saw the fight between Marinucci and Bryant and that Bryant did not at any time grab Marinucci's leg. Aside from the inadequacy of the showing of diligence on the part of appellants, the proposed evidence of the two witnesses would have been merely cumulative and furnished no reason for granting a new trial. (34 West's Cal.Dig. 480.)

It was stated in an affidavit of Mr. and Mrs. Bryant as follows: "That both these affiants were present, both in the court room, and in the corridors outside the court room, when many newspapermen were interviewing all members of the jury. Many jurors told the reporters in the court room, and outside the court room, that in their deliberations in the jury room, that the women had pinched themselves on the first day of the deliberations, and that some women had pinched other women in the jury room. That when the jurors returned the next day, none of the jurors had any pinch marks, or black and blue marks in the places that were pinched by the women jurors, and the jurors stated that this was one of the reasons that they decided the case for Marinucci and against the affiants. That the statements of the jurors indicated that women pinched other women, and themselves, and that there were no statements overheard where the men jurors pinched the women jurors." Appellants say in their brief: "Secondly, it would appear to this counsel that when the jury women pinched themselves on Friday, women jurors would pinch themselves, pursuant to affidavits, or women jurors would pinch other women jurors. This is apparently taking evidence out of court, and apparently this is partially some experiments upon which they based their judgment. The evidence, in Court, was a man pinching a woman. Generally speaking men have more strength than women. Further, whether the trial court granted a motion for a new trial or not on the grounds that

the jury pinched themselves in the jury room. It would appear to be a very good ground for reversal on appeal. It would appear that the jury is basing their decision on evidence taken outside of Court, and that jury experiments were conducted in a manner different than the factual situation in court, to-wit, women pinching themselves, which we know they would not pinch hard. Secondly, women pinching each other, which we know a woman juror would not pinch a fellow juror hard.'' We agree with counsel for the appellants that if during their deliberations, the women jurors pinched themselves or pinched each other, and on the following day found that the pinching left no bruises, this would have amounted to taking evidence out of court, and it could have influenced some of the jurors to question that the anatomy of Mrs. Bryant was or could have been bruised to the extent she described. We also agree with the earnest argument of counsel for appellants that the alleged pinching that took place in the jury room was highly improper and that it constituted misconduct upon the part of the jurors who participated. He is also correct in saying that in any event evidence of such experiments would have been incompetent for the reason that no comparison can be drawn between a puny pinch administered by one woman juror to another and the surreptitious squeeze of a stimulated steelworker in a barroom, such as the one described by Mrs. Bryant.

But evidence of statements made by jurors to third persons concerning their experiments in the jury room would be hearsay and, in any event, incompetent to impeach the verdict. Even the affidavits of jurors as to occurrences during their deliberations are inadmissible except for the purpose of showing that the verdict was arrived at by resort to chance. (Code Civ. Proc., § 657; 24 Cal.Jur. 877.)

The trial proceedings were conducted without error.

The judgment is affirmed; the purported appeal from the order denying motion for new trial is dismissed.

Wood (Parker), J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 24, 1957.