[Civ. No. 6096. Fourth Dist. Mar. 29, 1961.]

HERLUF FRIES et al., Appellants, v. ANDERSON, CLAY-
TON AND COMPANY (a Corporation), Respondent.

W. A. McGugin, Lerrigo, Thuesen, Thompson & Thompson, Harold V. Thompson and Walch & Griswold for Appellants.

Avery, Meux & Gallagher, Wild, Christensen, Barnard & Wild, Fulbright, Crooker, Freeman, Bates & Jaworski, Leon Jaworski, B. J. Bradshaw, Kenneth G. Avery and Robert M. Barnard for Respondent.

COUGHLIN, J.—The second amended complaint in this matter alleges a class action, brought on behalf of the two named plaintiffs and all others similarly situated, who were cotton growers, against the defendant, which operated cotton gins, to declare it a constructive trustee of 40,000 tons of cottonseed obtained through ginning the plaintiffs' seed cotton as their agent for which the defendant had not accounted. Seed cotton, which is cotton picked from the cotton plant, consists of cottonseed with the cotton lint attached thereto and incidental debris, such as other parts of the cotton plant, grass, weeds and dirt. Hereinafter seed cotton will be referred to as "cotton," cottonseed will be referred to as "seed," and cotton lint will be referred to as "lint." The second amended complaint was patterned after that approved by this court in *Fanucchi* v. *Coberly-West Co.,* 151 Cal.App.2d 72 [311 P.2d 33]. After a trial on the merits, judgment was entered in favor of the defendant, and the plaintiffs appealed.

For many years the defendant has been engaged in the business of ginning cotton and the processing of cottonseed; during the cotton ginning season of 1952-1953 operated 77 cotton gins in the San Joaquin Valley to which 5,102 cotton growers, including the plaintiff Herluf Fries delivered their cotton for ginning; and during the 1953-1954 season operated 75 cotton gins to which 4,144 cotton growers, including both of the named plaintiffs, delivered their cotton for the same purpose.

Each grower delivered his cotton to one of these cotton gins in trailers; the loaded trailer was weighed on certified scales; thereupon the cotton was removed; then the unloaded trailer was weighed; and the net weight of the cotton was obtained by subtracting the latter from the former weight.

Thereafter the cotton was ginned by machines which separated the lint, seed and debris; the lint was discharged at a designated location, weighed upon scales, processed and baled; the lint from each grower's cotton was kept and weighed separately from that of other growers; the seed was removed from the gin by blowers to another location and stored in bunkers and large piles; the seed of all the growers at the particular gin was intermingled in these bunkers and piles; it was not weighed; and the debris was discharged at a third location.

It was understood that the grower sold and the defendant purchased the seed derived through this operation; in due

time the seed was transported by truck to the defendant's cottonseed oil mills for processing; and the purchase price therefor was credited to the grower's account.

The picking and ginning of cotton must be accomplished in a comparatively short season; it is necessary that the ginning should be done with dispatch; and this need for speed, apparently, accounts for the fact that the seed is not weighed before being placed in the bunkers or stacked in piles. None of the defendant's gins were equipped with scales to weigh the seed. The named plaintiffs and the other growers in question knew these facts and also knew that their seed was not being weighed or separately stored. The testimony indicated that it would be impracticable to keep separate or to weigh the seed of each grower after it was removed from the gin; that the time consumed in doing so would detrimentally delay the ginning process.

As a consequence, pursuant to a custom of the cotton ginning industry which had been in existence for many years, the quantity of seed in each delivery of cotton, for the purpose of determining the price to be paid therefor, was calculated by the use of a formula and the result expressed in units of weight. The formula defined three categories and prescribed a ratio between the amount of seed and cotton in these different categories. If the scale weight of lint turned out by ginning exceeded 36 per cent of the scale weight of the cotton delivered for ginning, the formula directed that a deduction of 4 per cent of the scale weight of the cotton should be allowed for debris and the estimated weight of the seed would be the difference between the scale weight of the cotton when delivered less the combined weight of the lint and the estimated weight of the debris; if the lint turnout was less than 36 per cent and more than 30 per cent of the cotton, the scale weight of the lint was multiplied by 1.6 and the result constituted the estimated weight of the seed delivered; if the lint turnout was less than 30 per cent, its scale weight was multiplied by 1.5 to arrive at the seed estimate.

For each delivery of cotton the defendant rendered a ginning statement which set forth the weights of the cotton and the lint; stated the percentage of lint turnout, and if the percentage was under 36 per cent, carried the figure 1.6 or 1.5; accounted for the debris by listing it as 4 per cent and a stated number of pounds if the lint turnout percentage was

over 36 per cent, otherwise listed only the stated number of pounds which was determined by deducting the total of the lint scale weight and the seed estimated weight from the cotton scale weight; itemized their total expenses for which the grower was charged; and showed the credit allowed for the seed purchased by the defendant. The latter item was set up by completion of the following form:

"COTTONSEED ...... Lbs. @$ ...... per ton—— $....."

The figure used to denote the quantity of seed was that computed in accord with the formula heretofore detailed. The price per ton was that posted at the time the cotton was delivered to the gin. This was the current market price. The total credit was determined by the use of these two figures.

Eventually the seed was transported from the gin to the oil mill by truck. The truckers were paid on a per-ton haul basis. For this reason the seed was weighed when it arrived at the mill. The method of weighing was to cause the truck and seed to be placed on a scale and weighed; to empty the truck; to weigh the empty truck; and then determine the net weight of the haul by deducting the latter weight figure from the former. These are referred to as mill weights; the defendant maintained a record thereof; but this information was not conveyed to the growers. There was testimony that the seed became heavier after it was separated from the cotton and stacked in piles or stored in seed bunkers at the gin because of weight added by moisture. The plaintiffs contend that this evidence was improperly admitted. However, their objection goes to the weight of the evidence rather than its admissibility.

For the ginning seasons of 1952-1953 and 1953-1954 the total of the mill weights for all seed sent to the defendant's oil mills from all of its cotton gins exceeded the total of the estimated weight of the seed as indicated on the ginning lists sent to its growers by 24,559,071 pounds. The evidence showed, however, that for the 1952-1953 season the total mill weight of seed from each of 14 of its gins was less than the total of the estimated weight for that seed as shown on the ginning statements; that for the 1953-1954 season the total mill weight for such seed from 11 of its gins was less than the corresponding estimated weight; and that as to three of these gins the same condition existed for both seasons. On a valley-wide basis the mill weights in question exceeded the estimated gin statement weights by 2.80 per cent in 1952-1953

and 4.09 per cent in 1953-1954, whereas the difference in these figures with respect to seed from the gins to which the named plaintiffs sent their cotton for these two seasons was 2.32 per cent and 1.63 per cent respectively. It is apparent at once that there is no consistency in the variance between mill weights and the estimated statement weights. Except for the moisture content, the cause of such variance is not disclosed by the evidence.

The named plaintiffs had no conversation with any representative of the defendant in regard to the sale of any seed or to the use of the formula in determining the amount to be paid therefor. In their second amended complaint, they allege that the defendant ginned and took and held the seed obtained therefrom as their agent. However, at the pretrial conference in this matter they admitted their inability to establish any agency. Nevertheless, they contended that the pleadings, including the defendant's answer, alleged facts which would support a recovery by them under several legal theories. On appeal they contend that these facts were established as a matter of law and that the judgment denying the recovery was in error.

The plaintiffs claim that the evidence establishes a contract implied by law whereby they sold their seed to the defendant at a stated price per ton; that the amount of seed sold during the two seasons under consideration was greater than the amount for which they were paid; and that they were entitled to be paid for the difference. They contend that the sale in question was made upon the basis of weight; that any payment to them on the basis of other than scale weight is prohibited by section 1299.19 of the Agricultural Code; that the defendant not only violated section 1299.19 of the Agricultural Code but also section 12512 of the Business and Professions Code; that the formula prescribed by the industry's custom and practice conflicts with section 12300 of the Business and Professions Code and, therefore, formed no part of the transaction between the plaintiffs and the defendant; that the mill weights represent the true weight of the seed obtained by the defendant from them; that in failing to divulge these weights the defendant was guilty of a fraud and wrongful conduct resulting in its unjust enrichment; that any contract based on a sale by weight according to the industry's formula, being a violation of section 1299.19 of the Agricultural Code and section 12512 of the Business and Professions Code, is a nullity and they are entitled to the reason-

able value of their seed in accord with its true weight; that the defendant was a bailee of the seed and, as such, owed a confidential duty to the plaintiffs, in the nature of that imposed upon an agent, which required it to reveal to them the true weight of the seed received and that it may not profit from its failure to reveal this information by retaining the seed which it received in excess of the estimated weights; and that the defendant holds the amount of seed representing the difference between the estimated weights and the mill weights as a constructive trustee because it wrongfully, illegally and unconscionably acquired the same.

In addition to their claim that they are entitled to recover under the foregoing legal theories, which they contend are supported by the evidence as a matter of law, the plaintiffs also assert error by the trial court in other matters for which they seek a reversal of the judgment.

The plaintiffs' contention respecting their right to recover, regardless of the theory advanced, is premised on the alleged fact that the defendant purchased their seed on the basis of weight. This is in direct contradiction to the finding by the trial court that:

". . . at the time they sold their cottonseed to defendant, neither the named plaintiffs nor the defendant intended that the cottonseed should be weighed as the basis for determining what amount of money plaintiffs were to be paid for such cottonseed. The named plaintiffs and other ginning customers intended to sell to defendant all of the cottonseed derived from ginning their seed cotton, and intended that the amount of money they were to be paid for all of the cottonseed should be based on the estimate arrived at by use of the formula."

The trial court also found that "there was no express agreement between either of the named plaintiffs and defendant that the amount of money they were to be paid for the cottonseed was to be determined by any method or means other than that which was customary."

In substance, the plaintiffs claim that these findings are not supported by the evidence and are contrary to law. This conclusion is based upon their interpretation of the ginning statement and its relationship to the transaction involved; flows from the fact that units of weight are expressed therein, i.e., "Cottonseed . . . Lbs." and price "per ton"; and grows out of their application of section 12300 of the Business and Professions Code to the situation thus evolved.

■ Conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom present issues of fact for determination by the trier of fact and when the sufficiency of the evidence to sustain a finding of fact is contested on appeal, it is assumed that the trier of fact resolved every factual conflict in favor of the prevailing party, and the only issue presented thereby is whether there is any substantial evidence, direct or indirect, contradicted or uncontradicted, which will support the finding. (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231]; *Thomas* v. *Hunt Mfg. Corp.,* 42 Cal.2d 734, 736 [269 P.2d 12]; *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

Section 12300 of the Business and Professions Code provides that: ''Contracts . . . for anything to be sold . . . by weight or measure shall be construed according to the common standards, or according to the weights and measures of the metric system authorized by Congress, as the contract provides.''

■ It is argued that the only weight which may be considered under such circumstances is a scale weight; that a custom which substitutes an estimated weight for scale weight, is contrary to the code section; and that the code section and not the custom will be accepted in determining the obligations imposed by the contract. In support of their position the plaintiffs cite *Hale Bros.* v. *Milliken,* 5 Cal.App. 344 [90 P. 365], where a written contract for the sale of a given number of pounds of structural steel was under consideration, and the court held that evidence of a custom of the trade which determined weight in accordance with a formula rather than by scale was inadmissible, in that the standard of weights fixed by the code section in question was controlling in the absence of an expressed contrary intention. The court held directly that (p. 357):

''. . . the rule of construction of such contracts ought to be, as contemplated by the legislature, that they are to be conclusively presumed to have been made in reference to the statute, unless the parties themselves have agreed or indicated in their contracts that their execution is to be governed by some usage of trade or custom prevailing in the community where they were made, or their terms are to be performed.''

The factual distinction between the cited case and the instant case is apparent; the custom of the trade is not relied

upon in the instant case to interpret the contract between the parties as was the situation in the cited case; the custom of the trade in the instant case fixes the terms of the contract; establishes a contract in which the sale of the commodity is not based on weight; and, as a consequence, there is no basis for an application of the provisions of section 12300 of the Business and Professions Code. ▌ A sale price may be determined from the prior course of dealings between the parties and fixed by a custom of the industry concerned with the subject of their contract. (*California Lettuce Growers, Inc.* v. *Union Sugar Co.*, 45 Cal.2d 474, 482 [289 P.2d 785, 49 A.L.R.2d 496].)

▌ "It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract..." (*Hind* v. *Oriental Products Co., Inc.*, 195 Cal. 655, 667 [235 P. 438].)

▌ The plaintiffs rely heavily on the form of the ginning statement used by the defendant in support of their contention that the sale of seed was based on weight. As heretofore noted, in indicating the credit allowed the grower for his seed, that statement referred to seed by "Lbs." and cotton price "per ton." The ginning statements were issued after the cotton had been brought to the cotton gin which, obviously, was after the contract between the defendant and the growers had been made. Although the ginning statements might support an inference that the growers had agreed to sell their seed for a price computed on the basis of actual weight, they also support an inference that the sale was for a price computed on the basis of estimated weight determined in accord with an agreed formula. In support of the latter inference is the fact that the statements showed the *percentage* of lint and carried the formula figures 1.6 and 1.5 which were consequential factors only because the formula was being applied. Under the general rule applicable on appeal we must assume that the trial court accepted the latter inference.

▌ The defendant contends that it purchased whatever seed was in the cotton brought to it for ginning; that, in accordance with the custom of the industry, the price was to be fixed by a computation involving the application of a formula to determine the quantity thereof which would be designated in terms of a unit of weight, i.e., pounds, and the current posted market price, which also was related to a desig-

nated unit of weight, i.e., per ton. The plaintiffs refer to this contention as one based on a claimed bulk sale and argue that the evidence does not sustain a bulk sale finding. If the plaintiffs' description of the type of sale upon which the defendant relies is accurate, then it must be held that the evidence establishes a bulk sale. There is no doubt that each grower intended to sell and the defendant intended to buy all of the seed derived from the cotton during the ginning. The sale price thereof was to be fixed by a computation based on an application of the posted per ton market price to a quantitative factor described in terms of weight units to be ascertained in accord with a fixed formula. Stated otherwise, the price was subject to a computation which was the multiple of a quantitative factor ascertained by the application of a formula and described in terms of estimated weight, and a dollar factor described in a posted per ton market price. There is no contention that the formula was not correctly applied to the transactions under review. The plaintiffs' case is based solely on the claim that they were to be paid for their cotton in accord with a computation that applied the posted per ton market price to a quantitative factor determined by actual scale weight of their seed. However, as noted, the finding of the trial court to the contrary is adequately supported by the evidence.

Through their briefs the parties have engaged in a battle of semantics. The defendant consistently refers to "estimated weight." On the other hand, the plaintiffs use the term "weight" as synonymous with both "scale weight" and "estimated weight," whether interpreting testimony or a statute. However, a fair review of the record sustains the implied finding of the court that references in the testimony to "estimated weight" referred to the quantity of seed described in units of weight as determined by an application of the industry's formula, and that the use of the term "Lbs." in the ginning statement, to describe the quantity of seed for which the growers were given credit meant "estimated pounds," i.e., "pounds" as determined in accord with their agreement.

The plaintiffs contend that the defendant violated section 1299.19 of the Agricultural Code which provides: "In all cases where farm products are sold to and purchased by processors on the basis of weight, such products shall be weighed by a public weighmaster, licensed under the laws of this State, and a certificate as to such weight issued by him

to the seller, and settlement for such product shall be made on the weight shown thereby.''

By its terms the section applies only to sales ''on the basis of weight.'' It is obvious that the provisions thereof are concerned only with a sale where the weight of the products sold is to be determined by a scale; such products are to be weighed by a public weighmaster; there is no prohibition against a sale where the quantitative measure involved is to be determined by a formula resulting in an estimated weight as differentiated from a scale weight. The reason for the code provision is evident; if the sale is to be made on the basis of actual weight then the weighing which will determine that weight should be made by a public weighmaster. The parties to the sale in the instant case knew that the product sold was not going to be weighed; knew that it was impracticable to weigh it even if the facilities therefor were available; and entered into a sales agreement which would obviate a weighing. The fact that the price was determined by a formula describing the quantity of the product sold and the price to be paid therefor in units of weight did not make the sale one based on weight within the contemplation of the statute.

For similar reasons section 12512 of the Business and Professions Code is inapplicable to the instant situation. That section provides: ''Any person who . . . buys . . . any commodity . . . in a greater weight, measure, or quantity than he represents it to be or contain when said person as buyer . . . furnishes the weight, measure, or weighing or measuring instrument by means of which the amount, weight, measure, or quantity . . . is determined, is guilty of a misdemeanor.''

Again, obviously, this section is not referring to a situation such as the one at bar where the sale price of the commodity sold is determined by the application of a formula devised for the express purpose of obviating the necessity for an actual weighing of the commodity purchased. Even assuming, as the plaintiffs contend, that the weight of the seed at the oil mills was its actual scale weight at the time of ginning, the defendant made no representation respecting such weight; the representation made by the defendant was that the quantity of seed sold to it as determined by the industry's formula from the figures presented on its ginning statement was expressed in a stated number of pounds, for the purpose of determining the purchase price thereof, in accord with their agreement; there is no contention that this representation was false; and, consequently, there is no misrepresentation within

the purview of the code section in question. In addition, the defendant did not furnish "the weight, measure, or weighing or measuring instrument by means of which the amount, weight, measure, or quantity of the commodity bought" was determined, except with respect to the cotton and the lint; there was no weighing of or weighing instrument for the seed; there was no measure except as the application of the formula constituted a measure; and there is no contention that the weight of the cotton or the weight of the lint or the result of the formula application was incorrect.

The conclusion of the trial court that the defendant did not violate either section 1299.19 of the Agricultural Code or section 12512 of the Business and Professions Code was correct. The plaintiffs' contentions respecting the defendant's alleged unjust enrichment resulting from wrongful acts, and the existence of a constructive trust are premised upon their claim that the sale in question was based on actual weight of the commodity sold and the defendant's violation of the foregoing code sections; these premises, as indicated, are false; and the conclusions predicated thereon, therefore, are unsound.

The contention that the defendant held the seed as a bailee and its failure to reveal to the plaintiffs the actual scale weight thereof, as determined at the mill, constituted a violation of a fiduciary duty as a result of which it must account to the plaintiffs for the difference between the number of pounds of seed referred to on the ginning statements and the number of pounds of seed as determined by the mill weights, also is without merit. Again assuming that the mill weight represents the actual weight of the seed at the time of ginning, which was an inference the trial court did not have to accept, the established factual situation at bar does not support the plaintiffs' position. Regardless of the claimed relationship existing between the defendant and the plaintiffs, under the terms of their agreement the defendant did all that it was required to do; it weighed the cotton; weighed the lint; applied the industry's formula to the figures obtained therefrom and determined the price of the seed; rendered a statement with respect to these matters; and paid or credited the plaintiffs with the amount of seed purchased. The court found that no representations were made to the plaintiffs by the defendant "to mislead them as to the method to be followed in determining how much money they were to receive for their cottonseed; or as to the formula which was employed in

the transactions with them; or as to the actual weight of the cottonseed derived from their seed cotton''; that when the plaintiffs ''received gin statements from defendant, they knew that the cottonseed derived from the seed cotton entered on such gin statements had not been weighed and that defendant did not know the actual weight of such cottonseed and that the named plaintiffs and other ginning customers of defendant knew that the figure entered on the gin statements as the amount of cottonseed was arrived at by the use of the formula''; and that when the plaintiffs ''received gin statements from defendant, they understood that the 'net credit' shown thereon was the amount of money they would receive for all of the cottonseed derived from all of the seed cotton they had delivered to defendant for ginning in the ginning transactions covered by such gin statements.'' These findings are adequately supported by the evidence. Some of the grower witnesses testified that the credit indicated on the ginning statement was the price they were to receive for all of the seed derived from the cotton therein accounted for, whether the actual weight thereof was more or less than the estimated weight shown thereon. There was no misrepresentation; no fraud; no wrongful act; no illegality; no breach of fiduciary obligation; and any claim of unjust enrichment or holding as a constructive trustee is without factual foundation.

The decision of the trial court upon the merits of the case is fully supported by the evidence and the law in the premises. The trial court also determined that a class action was not proper under the circumstances. Relying upon statements made by the trial judge in his written memorandum opinion, the plaintiffs urge that the court applied an incorrect legal theory to the facts of the case and its decision respecting the impropriety of a class action should be reversed upon this ground. We need not consider this contention because the judgment must be affirmed regardless of the court's conclusion that the named plaintiffs could not represent all of the growers through a class suit. Assuming, as contended, that the case involves issues of fact and of law common to all cotton growers, then the findings of fact and conclusions of law not only support the judgment in favor of the defendant as against the named plaintiffs, but also support the judgment against all other growers. The decision of the court on the merits renders unnecessary a decision on the class action issue.

The plaintiffs claim that the court erred in failing to find upon all of the material issues presented by the pleadings.

Most of the issues about which they make this complaint are immaterial in view of the court's finding that the transaction in question involved a sale of all of the seed derived from the ginning of the growers'· cotton for a price to be determined by the use of a formula and not by actual weight, which heretofore has been set forth in full, and its other findings that clearly support the judgment in favor of the defendant. For example, no valid objection can be made on account of the court's alleged failure to make certain findings with respect to the issue of damages, or the maintenance of a class action, both of which are rendered immaterial to the judgment by the finding on the issue of liability. Many of the other issues upon which the plaintiffs claim the court failed to make findings are within the same category.

 ''If findings are made upon issues which determine a cause, other issues become immaterial, and a failure to find thereon does not constitute prejudicial error.'' (*Leonard* v. *Fallas,* 51 Cal.2d 649, 653 [335 P.2d 665].)

The remaining objections are directed to a failure to find upon probative facts. The plaintiffs did not request specific findings thereon. (*Cf.* Code Civ. Proc., § 634.) ''The finding of ultimate facts includes the finding of all probative facts necessary to sustain them'' (*Fischer* v. *Ostby,* 127 Cal. App.2d 528, 531 [274 P.2d 221] ; *Broadway Fed. Sav. & Loan Assn.* v. *Howard,* 133 Cal.App.2d 382, 396 [285 P.2d 61]) ; ordinarily a trial court is not required to make express findings on evidentiary matters. (*Bloss* v. *Rahilly,* 16 Cal.2d 70, 76 [104 P.2d 1049] ; *Ho Gate Wah* v. *Fong Wan,* 118 Cal.App.2d 159, 163 [257 P.2d 674].) There is no merit to the contention respecting a lack of findings.

 The trial court sustained objections to the admission of evidence of alleged overages in ginning seasons following 1953-1954. The plaintiffs' offer of proof in this regard was made by reading portions of the testimony from depositions of three witnesses. In substance, this testimony would tend to prove that the combined mill weights for each season that the formula was used exceeded the combined estimated weights set forth in the ginning statements for that season; that, commencing with the 1954-1955 season, the defendant made a payment to each of its growers in addition to the amount credited to them for their seed pursuant to the formula estimate; that each grower was paid so much per bale of lint; that all of the growers were treated the same; and that during these seasons the defendant followed the same

practice of estimating the quantity of seed for the purpose of price determination as shown on the ginning statements which had been followed in prior years.

It is argued that the testimony respecting the payments for the 1954-1955 and subsequent seasons should have been admitted as proof of an admission by the defendant against its interests; as proof that there was an actual overage, i.e., an excess of scale weight at the time of ginning over estimated weight; and as proof of the propriety of a class action. In urging that the ruling of the court sustaining the objection to the testimony in question constitutes prejudicial error, the plaintiffs place themselves in the inconsistent position of contending that the evidence admitted establishes without conflict and as a matter of law the facts upon which they base their claim for recovery, and at the same time claiming that the court should have permitted admission of the evidence in question to prove the facts which are so established.

Objection to the proffered evidence was sustained on the ground that it was incompetent, immaterial, irrelevant and involved collateral issues. In substance, the trial court concluded that there were a great many reasons which might have influenced the payment of an additional amount to the growers in the subsequent seasons such as competition, public relations, a change in price, inflation, and similar factors, and that proof with respect to these reasons would open up many collateral issues. The offer of proof did not include an offer to show any reason which prompted the additional payment except the testimony of one witness which indicated that the payment for the 1954-1955 season was made in settlement of a lawsuit and the testimony of another witness which indicated that it was made as an adjustment. Evidence of payments made in settlement of a lawsuit as proof of an admission of liability under the issues presented therein is incompetent as a matter of policy. (*Price* v. *Atchison, T. & S. F. Ry. Co.,* 164 Cal.App.2d 400, 404 [330 P.2d 933]; *Oldenburg* v. *Sears, Roebuck & Co.,* 152 Cal.App.2d 733, 749 [314 P.2d 33]; *Brown* v. *Pacific Electric Ry. Co.,* 79 Cal.App.2d 613, 615 [180 P.2d 424].) The offer in question necessarily involved an inquiry into collateral issues and the observation of the trial court in this regard was correct. In the presentation of evidence collateral questions must be avoided (Code Civ. Proc., § 1868; *Marinucci* v. *Bryant,* 151 Cal.App.2d 298, 304 [311 P.2d 622]); and the right to permit inquiry into such questions under circumstances similar to those presented here is **a**

matter within the discretion of the trial court. (*Sanders* v. *Austin*, 180 Cal. 664, 666 [182 P. 449].) ▮▮▮ The showing in the present case does not establish an abuse of that discretion. Furthermore, the mere payment of the additional amounts, of itself, did not constitute an admission against interest; the fact that all growers were treated alike even though the evidence in this case proves without conflict that many of them received an amount for their seed which exceeded the amount they would have received had its price been computed in accord with the mill weights, indicates the likelihood that additional payments were made for good will or policy purposes. For similar reasons the proffered evidence was not proof of an actual overage. Under all of the circumstances, the trial court was entitled to sustain an objection to the proffered testimony until a foundation establishing its relevancy had been assured by an offer of appropriate evidence. (*Decter* v. *Stevenson Properties, Inc.*, 39 Cal.2d 407, 419 [247 P.2d 11] ; *Avery* v. *Wiltsee*, 177 Cal. 484, 487 [171 P. 95] ; *Alvarado* v. *Anderson*, 175 Cal.App.2d 166, 179 [346 P.2d 73] ; *People* v. *MacArthur*, 125 Cal.App.2d 212, 219 [270 P.2d 37].) As the class action issue is not determinative of this appeal, any error with respect to the rejection of evidence in connection therewith is not prejudicial.

In their opening brief the plaintiffs have set forth 22 contentions. Many of these are duplications. We have passed upon all of the contentions made which, if valid, would require a reversal although our consideration thereof, because of the duplication heretofore noted, does not identify the contentions in the same manner as they are indentified in the plaintiffs' brief. The findings made by the trial court are adequately supported by the evidence, and the conclusions of law drawn therefrom are proper.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 24, 1961.