LeMars Mutual Insurance Company, a corporation, appellee,
v. Carl Tasler et al., appellants.

No. 50811.

(Reported in 118 N.W.2d 524)

December 11, 1962.

Batschelèt & Thompson and Hasbrouck & Hasbrouck, all of Guthrie Center, and Joy & Wifvat, of Perry, for appellants.

Mahoney, Jordan, Statton & Smith, of Boone, for appellee.

PETERSON, J.—Defendants Carl and Helen Tasler purchased a five-year fire insurance policy from plaintiff in the amount of $6000 on their home and $4000 on household goods, on April 4, 1959. They purchased the policy through the agency of Mr. and Mrs. John Kersey who live at Jefferson. The Tasler home is located at Yale, in Guthrie County.

On December 27, 1960, a destructive fire occurred, burning the house beyond usage, and damaging or destroying the household goods beyond repair. Defendants notified agent Mrs. Kersey of the fire on December 28, 1960, and received assurance the company would be notified; and an adjuster would be there in a few days. Two adjusters contacted defendants on three occasions within the following thirty days. The parties could not agree on settlement, and plaintiff finally refused to settle.

Defendants sued plaintiff on the policy. Plaintiff secured a stay as to the action at law, and filed this action for declaratory judgment. Plaintiff prayed for declaration of nonliability, by reason of failure on the part of defendants to file verified proof of loss within sixty days. The trial court entered decree in favor of plaintiff. Defendants appealed.

The one question in the case is whether or not the filing of a verified proof of loss may be waived by complete knowledge as to the catastrophe, together with certain statements and actions of insurance company's representatives.

I. The fire which damaged and destroyed defendants' home and household goods beyond usage occurred on the evening of December 27, 1960. On the morning of December 28 Mrs. Shirley Henen, daughter of defendants, telephoned Mrs. Kersey, the agent at Jefferson, advising her of the destructive fire. On the same day Mr. Tasler went to Jefferson and talked to Mrs. Kersey, giving her all details as to the fire. She promised to give the home office and the area adjuster at Boone notice of the fire. She assured Mr. Tasler they would take over and take care of it.

Mrs. Kersey immediately mailed to plaintiff a "Notice of Loss" and sent a copy of it to Mr. Russell W. Sandy, the area adjuster. The relevant parts of the Notice of Loss are as follows:

"NOTICE OF LOSS

NAME OF COMPANY.
LeMars Mutual Insurance Company

AGENCY AT (CITY OR TOWN).    POLICY No.    AMOUNT.
Jefferson, Iowa    40549    $10,000.00

TERM (FROM, TO).
4-4-59 to 4-4-64

NAME OF INSURED.    DESCRIPTION AND LOCATION OF PROPERTY COVERED.
Carl &/or Helen Tasler    Lots 3-4-5, SW¼ of Sec. 33-Twp. 81, Rge. 30 Yale, Iowa

DATE OF LOSS.    HOUR OF LOSS.    PROBABLE AMOUNT ENTIRE LOSS.
Dec. 27, 1960    8:30 P.M.    Unknown

KIND OF LOSS (FIRE, WIND, EXPL., ETC.)    ORIGIN OF LOSS.
Fire    It started in the basement

REMARKS: BRIEF DESCRIPTION OF DAMAGE.
The dwelling is burnt so badly that they are moving some of the things that can be used to a different location.
Please have an adjuster on this loss in the near future.
A copy of this report was mailed to Russell W. Sandy.

AGENCY NAME, STREET ADDRESS.
John Kersey
Box 454
Jefferson, Iowa."

Mrs. Kersey also told Mr. Tasler he should make an itemized list of all household goods, showing the age of each piece and its cost at time of purchase. She said this should be made promptly so he would have it ready when the adjuster came. He and his daughter prepared such list. It consisted of 156 items and the total cost of the items was $8501.66. The age ran from recent items a few months old to other items several years of age.

Within ten days after the fire Mr. Wallace Teagarden called on Mr. and Mrs. Tasler. They were living at the home of their daughter Shirley because of the fire. Mr. Teagarden is a graduate of the Law College of the University of Iowa, class of 1948. He practices law at Ames part time, devoting the remainder of his time to the adjustment of claims for various insurance companies, including plaintiff.

The adjuster went with Mr. Tasler to the burned house and took pictures of the house and of various rooms containing damaged and destroyed furniture. He did not accept Mr. Tasler's list of furniture and prices, but made a complete copy for himself and his company.

In the course of the conversation he asked Mr. Tasler if he would send the household goods to Perry or Omaha and try to have them repaired. Mr. Tasler said he would not do so because he was turning the whole matter over to the company. He then asked Mr. Tasler about an electrician and was informed that one lived across the street. Mr. Teagarden called on the electrician and asked him to take all electrical appliances out of the Tasler house and move them over to his shop to see if they could be rehabilitated.

Mr. Teagarden made arrangements for a trucker, Mr. Alvin G. Smith of Perry, to get the household goods. The truck came on January 7. Mr. Smith testified as to what household goods they took, "which included everything in the house except any electrical appliances of any type." Mr. Smith testified that Mr. Teagarden came to see him sometime afterward and asked him if any of the goods could be salvaged or repaired. Mr. Smith told him he thought they could, and Mr. Teagarden's answer was: " 'Well, we will find out what should be done and we will let you know.' " The goods were stored at 1202 First Street in Perry. Mr. Smith never heard from Mr. Teagarden as to repairs. Apparently, he ordered them back to defendants' burned house because Mr. Smith further testified: "On July 6 we returned the property back to the house where we picked it up."

Mr. Merritt W. Dillinger, the electrician who lived across the street from defendants, moved the electrical appliances from the Tasler home to his basement. He said the items moved were

the following: kitchen range, automatic washer, a dryer, electric sewing machine, television, electric deep fat fryer and an electric toaster. About ten days later Mr. Teagarden came to inquire if the items could be fixed. Mr. Dillinger said some of them could be, and Mr. Teagarden said he would let him know. Mr. Teagarden never came back and at the time of trial in October 1961 the articles were still in Mr. Dillinger's basement.

At the time Mr. Teagarden came back to see Mr. Dillinger he also called on Mr. and Mrs. Tasler at their daughter's house. At that time no definite statements as to adjustment were made. The meeting only developed into a visit between the parties.

On January 27, 1961, Mr. Teagarden and Mr. Russell W. Sandy came to the daughter's home. Mr. Tasler was there and they entered into discussion with him as to settlement of the claim. Mr. Teagarden made an offer of settlement of $6500. Mr. Tasler refused to accept the offer, directing the adjuster's attention to the fact that the original value of the household goods was over $8000, and that his loss would be more than the policy limit of $4000. He also told Mr. Teagarden and Mr. Sandy that he had secured three bids from contractors on restoration and rebuilding of the home. Each bid was $8000. He showed the bids to Mr. Teagarden. They were in excess of the policy limit of $6000. At this point the conversation became somewhat heated and Mr. Teagarden said he apparently could not settle with Mr. Tasler because he was ignorant and stubborn. He said he would settle with Mrs. Tasler. She was at her place of work, and her daughter called her home. When she came home she was advised about the offer of settlement of $6500. She refused to accept it.

Mr. Teagarden and Mr. Sandy left. That was the last time they came to see defendants. Mr. Tasler retained an attorney. Mr. Teagarden called later on the attorney, but no settlement was made.

After some weeks defendants started an action at law against plaintiff for $10,000, the amount of the policy. On April 4, 1961, plaintiff filed this action for declaratory judgment, praying for decree of nonliability of plaintiff by reason of failure

of defendants to file proof of loss within sixty days after the fire. The action at law was stayed, awaiting conclusion of this case.

The trial court in its declaratory judgment decreed nonliability on the part of plaintiff for failure of defendants to file proof of loss. The record discloses that Mr. Teagarden testified he had requested defendants, and also defendants' attorney, to file proof of loss. For some unaccountable reason Mr. Sandy did not testify in the case and said contention rests upon Mr. Teagarden's testimony alone.

Both defendants and their daughter deny anything was said either by Mr. Teagarden or Mr. Sandy to the effect that a verified proof of loss should be filed. Defendants' attorney also denies such statement was made by the adjuster to him. A distinct conflict appears in the evidence. Apparently, the trial court believed the testimony of Mr. Teagarden. This action is triable de novo. As to this question of fact, it was not sensible or reasonable, when Mr. Teagarden was discussing settlement with defendants and especially when he and Mr. Sandy had all available facts as to the fire and the property, that he would suddenly burst out and say defendants must file a proof of loss.

At any rate, whether he did say it or not is immaterial. The actions and statements of Mr. Teagarden and Mr. Sandy were such that there was a waiver on the part of plaintiff as to the filing of a formal verified proof of loss.

II. We have held in numerous cases in the course of our judicial history that under certain circumstances the filing of the formal proof of loss is waived. Stephenson v. Bankers' Life Assn., 108 Iowa 637, 79 N.W. 459; Condon v. Des Moines Mutual Hail Assn., 120 Iowa 80, 94 N.W. 477; Sinclair & Co. v. National Surety Co., 132 Iowa 549, 107 N.W. 184; Elliott v. Home Mutual Hail Assn., 160 Iowa 105, 140 N.W. 431; Lee v. Farmers Mutual Hail Ins. Assn., 214 Iowa 932, 241 N.W. 403; Carver v. Preferred Accident Ins. Co., 218 Iowa 873, 876, 256 N.W. 274; Parker v. Iowa Mutual Tornado Ins. Assn., 220 Iowa 262, 260 N.W. 844; Schoeman v. Loyal Protective Life Ins. Co., 239 Iowa 664, 32 N.W.2d 212; also see 29 Am. Jur., Insurance, section 1120, page 840 (now 29A Am. Jur., section 1401, page 514); 29A Am. Jur., Insurance, section 1426, page 536.

In Carver v. Preferred Accident Ins. Co., supra, we said: "It is whether the acts of the agent alleged in the petition and amendments are sufficient to constitute a waiver of notice. * * * Plaintiff orally notified the general agent of his injury, well within the time limit set for giving notice, and that the general agent agreed that he would give proper and timely written notice to the company. * * * the situation is the same as if it were alleged that the company had said to plaintiff, 'You need do nothing further in regard to giving notice.' "

In the case at bar defendants notified plaintiff's agent and plaintiff's agent sent a notice of loss to plaintiff's home office. The agent said the company would take over and take care of the matter.

In Schoeman v. Loyal Protective Life Ins. Co., supra, at page 670 of 239 Iowa, this court said: "The function of proofs of loss is to advise the insurer of the essential facts upon which its liability depends. Generally speaking, provisions for the furnishing of such proofs will be liberally construed in favor of the insured."

As to general provisions of law see following statement in 29A Am. Jur., Insurance, section 1401, page 514, supra: "No matter what the form of a notice of loss may be, if it operates to bring the attention of the insurer to the loss * * *, sets forth the essential facts upon which the liability of the insurer depends, and appears credible, it is sufficient."

Also see 29A Am. Jur., Insurance, section 1426, page 536, supra: "Likewise, an insurance company which, after a loss, takes and remains for a period of four months in possession of the insured goods, under a provision of the policy by which the company * * * may take possession of the premises and of any goods thereon at the date of the fire * * * is precluded from relying upon a failure of the insured to deliver detailed particulars of the loss within the time specified by the policy."

III. At the expense of slight repetition, and to summarize, the crux of the matter in the case at bar is: Did plaintiff and its agents acquire complete information about the fire and the property damage? Having such knowledge did they act and talk in such a manner that they lulled Mr. and Mrs. Tasler into

believing that a formal proof of loss was not required? Plaintiff's agents did so act and talk. Defendants did so believe.

The decision of the trial court is reversed. If order of court was entered staying defendants' action at law against plaintiff, the district court is instructed to cancel such order.—Reversed.

All JUSTICES concur.