422 P.2d 411

**Joe CARRASCO and Mary Carrasco, husband and wife, Appellants,**

**v.**

**Manuel CARRASCO, Appellee.***

**No. 2 CA–CIV 242.**

Court of Appeals of Arizona.

Jan. 12, 1967.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's No. 8307. The matter was referred to this Court pursuant to A.R.S. Section 12–120.23.

Larry L. Dier, Los Angeles, for appellants.

Lawrence Howard, Tucson, for appellee.

HATHAWAY, Chief Judge.

The appellants, Joe and Mary Carrasco, have appealed from a judgment in the sum of $3,128.86 awarded the appellee, Manuel Carrasco; from objections to the master's report which were overruled; and from an order denying a motion for a new trial. The appellee brought this action against the appellants and sought a partnership accounting, dissolution and partition.

Summarily, the facts are: In 1951 Joe and Manuel Carrasco, brothers, entered into an unwritten agreement to purchase land known as the Quatros Vientos. The cost of the property, which was to be used for cotton farming, was $15,000. A down payment of $3,000 was made and four consecutive annual installments of $3,000 each followed. It was agreed that both would work the property and split the profits fifty-fifty.

In 1954 Manuel quit toiling the partnership land because of disagreements with Joe. Manuel claims that he was to receive ten per cent of the gross profits after 1954. Joe denied that there was such an agreement.

Upon appellee's motion a master was appointed by the court to prepare an accounting. The master stated in his report that the records were inconclusive and incomplete. No partnership books were kept. In the instant case, we could say as Justice Bernstein said in Hurst v. Hurst, 86 Ariz. 242, 344 P.2d 1001 (1959):

> "* * * the most prominent fact to be deduced from the highly confused record in this case is that the arrangement among the parties in its inception was a model of looseness and in its administration a model of disarray."

The parties stipulated that the master's report would be binding, except where specific objections were made.

The trial court heard the parties' objections to the master's report and proceeded with the trial. Then the court sus-

tained and overruled objections to the master's report. The court credited Manuel's capital account for $9,728.86 and Joe's capital account for $6,600, gave Manuel judgment for $3,128.86 (the difference in the capital accounts), determined that except for a certain tractor all the farm equipment was appellants, and directed that the partnership property be partitioned, one half to each.

■ When the trial court overruled objections to the master's report, in effect, it sustained the master's report as to those findings.

First, we will ascertain the merit of appellee's contention that Joe was the managing partner. In Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260 (1960) the Arizona Supreme Court stated that a managing partner is charged with making a true accounting, that his position is similar to a trustee's, that a showing of exclusive control over the accounts shifts the burden of producing evidence, and that commingling of partnership and personal funds requires that all financial ambiguities be resolved against the managing partner.[1]

A joint checking account was established from which both men initially drew. There is no evidence that Manuel wrote a check on the account after early 1954 and all cancelled checks were returned to Joe, since the account carried his address. Joe on cross-examination testified:

"Q And for the years of 1954 to 1960 you managed that partnership property, did you not?

"A Yes.

"Q And you collected all the monies from it?

"A Yes.

"Q And you paid all the bills?

"A Yes.

"Q And you filed all the tax returns?

"A Yes.

"Q And you kept no books, though, is that right?

"A Very little, very few records that I kept. I didn't have the time and—you know, farming is one of the businesses upon which you are not required to keep records."

The master stated that there were no tax returns available for the years 1953, 1955 and 1958; that this partnership had the worst set of records he had ever encountered; that Joe said the records were burned in a fire in 1954 and that he could not locate records subsequent to that date. Later he testified that the fire occurred in 1956, and at the trial he appeared to have found more records.

■ We will resolve all doubts on particular items against Joe, since the evidence convinces us that he was the managing partner subsequent to 1954.

The nub of appellants' numerous contentions is that the master's report is clearly erroneous and that the trial court erred in overruling their objections just because the master made a contrary finding. Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335 (1962) quotes the United States Supreme Court's interpretation of the clearly erroneous standard:

"'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"

■ The trial court's findings of fact will not be set aside unless shown to be clearly erroneous, because due regard shall be given the court's opportunity to judge the credibility of the witnesses. We will not substitute our opinion for that of the trial court when the evidence is in conflict. Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242 (1961).

1. Accord, Mollohan v. Christy, 80 Ariz. 141, 294 P.2d 375 (1956), where the parties were joint venturers.

We do not believe that the trial court erred in overruling the following objections:

(1) Appellants objected (Objs. Nos. 3 and 4) that Schedule B did not accurately reflect their capital contributions because their 1952 mortgage payment of $2,000 and their 1954 mortgage payment of $2,200 were not listed. They point out that the master's reported partnership income for 1952 and 1954 was insufficient to make the mortgage payment for each of those years. Thus they argue that Joe's testimony that he made the mortgage payments established the error.

■■■■ There is conflicting testimony as to who made the 1954 mortgage payment. At that time Joe was the managing partner, so all doubts will be resolved against him. As to the 1952 payment there also was no error. The only testimony showing that the appellants made the payment is Joe's. The trial court is not bound to accept as true the uncontradicted testimony of an interested party. Graham v. Vegetable Oil Products Company, 1 Ariz.App. 237, 401 P.2d 242 (1965).

(2) Several of appellants' objections (Objs. Nos. 10, 11, 17 and 18) relate to the 55–45 per cent split of net income used by the master in determining the credit to the partnership and separate incomes. They argue that the "master's report was the product of guesswork" and therefore clearly erroneous.

The master testified that he used the 55–45 per cent split, because the partnership farm had 55 cultivable acres and Joe's separate farm had 45 acres; the lumping of the partnership income and separate income in Joe's available tax returns made the returns inconclusive; and information sources were fragmentary due to lack of records.

To support these related objections, the appellants rely on Joe's testimony that different specific acreages were planted in various years on the partnership farm and his farm. They further rely on Manuel's general testimony that not all the partnership property was planted in certain years.

■■■ The only evidence relating to the amount of acreage planted and corresponding expenses was Joe's testimony. Apparently this testimony did not convince the superior court judge, nor was he bound to accept it as true. Graham v. Vegetable Oil Products Company, supra.

(3) Appellants objected (Obj. No. 5) that Schedule B was incomplete, because no credit was allowed for the use of Joe's machinery on the partnership property for 1952, 1953 and 1961. Evidently, compensation for the use of the machinery was to be in the form of a seed credit. Manuel testified that the seed credit had been given and Joe testified to the contrary. Viewing the conflicting evidence favorably to the appellee, we find no error.

■■■■ (4) The appellants objected (Obj. No. 7) to the master's failure to credit them for extra work. At the trial they abandoned their claims for compensation for extra work performed after 1954. The appellant cannot revive these claims on appeal. In their brief the appellants concede that there is a conflict in the testimony as to the amount of work Manuel performed before 1954. The judgment on this point is supported by substantial evidence and we will therefore not disturb it.

■■■ (5) Since the partnership was organized to grow cotton, the appellants objected (Obj. No. 15) to the finding of partnership income in 1959, because grain was the only crop grown on the partnership land that year. Manuel said that he was satisfied with the money he received from the grain crop. Another witness, who planted the grain, testified that no cotton was grown that year. The only doubt here is awakened by Joe's statement that the money paid Manuel was from a cotton gin check received that year. Evidently, the trial court overruled this objection on the basis that a cotton gin check must have represented a cotton transaction with the gin. We are not aware of cotton gin's buying practices, i. e., whether or not they buy grain crops. We therefore will not disturb the trial court's ruling.

Lastly, appellants contend (Obj. No. 12) that the income information for 1956 in Schedules 1 and D of the master's report is incorrect because it calls the 1956 income, rental income. They seek to have the 1956 partnership income adjusted to 25 per cent of the total gross income for the year and then to have the appellee's 10 per cent credit computed from that figure. In their brief the appellants state that the master confused the trial court on this point. Appellants have not made it clear to us the relief they seek here and accordingly we will not deal with this contention.

The judgment is affirmed.

KRUCKER, J., and ALICE TRUMAN, Superior Court Judge, concur.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge ALICE TRUMAN was called to sit in his stead and participate in the determination of this decision.