466 P.2d 11

PERRY BROTHERS, a partnership, and Paul E. Perry, Anna M. Perry, William H. Perry and Carmella Perry, individually, and as partners in Perry Brothers, Appellants, and Cross Appellees,

v.

Adolph WEINBERG, Appellee, and Cross Appellant.

No. 9673.

Supreme Court of Arizona, In Division.

Feb. 20, 1970.

Rehearing Denied March 24, 1970.

Snell & Wilmer, Phoenix, for appellants, cross appellees.

Miller, Byrnes & Davidson, Scottsdale, for appellee, cross appellant.

HAYS, Justice.

This cause comes before the court on cross-appeals of the respective parties. For the reasons stated herein, we reverse in part and affirm in part.

The plaintiff, appellee, Adolph Weinberg, brought an action for breach of contract and replevin against the defendants, appellants, Perry Brothers, a partnership, and the individual partners thereof, (hereinafter referred to collectively as Perry Brothers), alleging an unlawful detention by Perry Brothers of some 490 head of cattle owned by Weinberg. Plaintiff prayed for the immediate possession of the cattle or their value, damages incurred for the wrongful detention, and for an accounting under an alleged cattle feeding agreement.

Perry Brothers answered the replevin action by asserting the statutory agister's lien provided for in A.R.S. § 33–921 on the 490 head to satisfy the amount of feed and pasture charges due and unpaid by Adolph Weinberg. By way of counterclaim, Perry Brothers petitioned in Count I for an accounting under the contract and for damages for wrongful replevin. In Count II, Perry Brothers asserted a claim for damages against Weinberg for breach of an implied contract provision that Weinberg would deliver only healthy cattle to the premises of Perry Brothers. The counterclaimants alleged that tubercular cattle owned by Weinberg were placed on Perry Brothers premises. It is further alleged that as a result of this breach, the claimant's property was put under tuberculosis quarantine by the State Veterinarian and monetary damages were thereby incurred.

The issues were tried before the court sitting without a jury. By pre-trial order the issues of fact were narrowed to a determination of the terms of the oral contract as claimed by each party and the damages resulting from any breach or accounting under the terms thereof. By stipulation it was agreed that the issue as to the terms of the contract entered into between the parties would be tried to the court separately and prior to the trial on issues pertaining to any breach or for sums due under an accounting.

As to the trial on the terms of the oral contract, it was stipulated that the contract was entered into for the feeding of plaintiff's cattle by the defendants and that the term of the contract was from January, 1962 until January, 1963. Plaintiff claimed that he was to pay defendants 20¢ per lb. for the increase in the weight of his cattle, less a factor to allow for 4% shrinkage on the out-weights. The defendants claimed that plaintiff was to pay the defendants' cost of feeding plaintiff's cattle plus a "reasonable profit" with plaintiff to advance the sum of 20¢ per lb. for the gain in weight. Defendants denied any agreement as to the shrinkage. In his findings of fact, the trial court ruled that the terms of the contract were as follows:

"1. * * * Plaintiff was to pay defendant 20¢ per lb. gain in weight only of plaintiff's cattle.

2. Under the terms of the agreement between the parties the plaintiff was not entitled to the 4% shrinkage claimed."

Neither party has appealed from these findings and therefore the terms of the contract are final.

I. The appeal taken by the defendants Perry Brothers is from the judgment entered in favor of the plaintiff on the action for replevin and which awarded Weinberg judgment on the accounting in the amount of $669.40 plus his cost of the action. Perry Brothers challenges the trial court's judgment on the accuracy of the accounting as found by the court. The appellant argues that the court below erred in the method of accounting used and in the application of certain figures which appellant maintains led the court to an erroneous result.

Because the issue of the accounting is simply based on the application of agreed figures to a reasonable formula, we are not compelled to follow our normal rules which would bind us to the findings of the trial court. Rather, the principle applies that where the evidence on which findings of the trial court are based is entirely documentary, the appellate court is not bound by the findings of the trial court but may make an independent decision on factual questions. DeSantis v. Dixon, 72 Ariz. 345, 236 P.2d 38, 44 A.L.R.2d 513 (1951).

Since this contract was found to be based on the net gain in weight of cattle placed on defendant's feed lot, it is basic that some figure must be determined which represents the total in-weights and the total out-weights for the cattle dealt with. Several exhibits were introduced into evidence on this issue which on close examination are totally unreliable, and from an accounting standpoint, wholly inconsistent and unsupportable. The attorneys, obviously aware that proof on these figures was hopeless, entered into a stipulation, sparing us the impossible task of reconciling Perry Brothers books for them. In any case the parties agreed upon these figures:

Total out-weights    690,245 lbs.
Total in-weights     480,805 lbs.

Ordinarily one would simply subtract the in-weight from the out-weight and multiply the result by 20¢ per lb. to determine what is due under the contract. Unfortunately, somewhere along the line Perry Brothers misplaced and cannot account for 7 head of cattle. Clearly Weinberg is entitled to be compensated for the value of the 7 missing head and to offset this against the contract. Therefore, the accounting must take into consideration the value of the missing cattle.

It is agreed that Weinberg should be paid 20¢ per lb. for the missing cattle. The weight of the 7 unidentified cows is a major point of contention between the parties. Perry Brothers argue that the burden of proof is on Weinberg to prove the weight of the 7 cows with specific evidence. Obviously no one knows the exact weight of any specific cow in the herd since they were weighed in and out in truckload lots so we must deal with the weight of an average cow on a certain date.

The trial court determined that the average weight for one of the missing cows would be the same as the average weight of

one cow removed from Perry Brothers premises on the last day of the contract. The defendants dispute the choice of the last contract day since (1) Weinberg has not proved the exact date of their disappearance and (2) because obviously the cows were not part of that group; that is the 490 cows replevied by the sheriff. On this basis they argue that the average weight of the 490 replevied cows is irrelevant. Defendants ask the court to figure the weight based on the average in-weights for all cattle brought onto the feed lot, since this figure would necessarily include the 7 missing head.

■■■ Obviously, there are several dates on which to figure the average weight. The basic question is who has the burden of proof and who bears the risk of loss. Perry Brothers maintain that the burden is on the plaintiff to prove his case and that speculative evidence is not sufficient on which to base a verdict. It is equally true, however, that Perry Brothers stand in the position of a bailee and as such owe a duty of ordinary care to the owner for the care and preservation of the herd. As a bailee Perry Brothers must bear the loss of mysterious disappearance. As to the burden of proof, Perry Brothers are certainly in a better position to know the date of the disappearance of 7 head than is the owner. If they cannot prove the exact date of the disappearance then the burden of loss should fall more heavily on them. The

bailee should bear the burden of establishing the weight of the 7 missing head and if he does not know the date of their disappearance then it seems to us that the owner is entitled to be awarded damages measured by the highest weight of the cattle between the date when the contract commenced and the date when the bailor received notice that the property had been lost. See P & G Distributing Co. v. Lawrence American F. Warehousing Corp., 16 N.Y.2d 344, 266 N.Y.S.2d 785, 213 N.E.2d 873 (1965). The logical assumption is that the cattle taken off the feed lot on the last day were "fattened" cattle and that they were at their optimum weight. Since Weinberg was entitled to damages measured by the highest value of the property it will be assumed in the absence of contrary evidence that the cows which have disappeared are 7 "fattened" cows and that their weight is equal to the average weight of those removed by the sheriff on the last contract day. Therefore, on that theory the trial court was correct in choosing the last contract day for the valuation of the missing cow.

However, counsel for both sides and the court did not pick up mathematical errors in the simple computation of the average weight. Plaintiff's counsel apparently did the computations as shown on plaintiff's exhibit #29, "contract accounting." The accounting shows that the 490 head removed by the sheriff weighed *433,680*. At the bottom of the exhibit the computation of the average weight is shown as follows:

490 head weighed *443,680* = 941 av. per animal.

Not only was 10,000 lbs. erroneously added in the transposition from the top of the page to the bottom but the simple division is inaccurate. Even using the erroneous figure the average weight computes to be only 905.4 lbs. This exhibit was admitted into evidence without objection and apparently the court accepted the figures thereon.

Let it be noted 433,680 divided by 490 is 885; the weight of 7 cows is 6,195; and at

20¢ per lb., the value of the 7 missing cows is $1,239.00.

Having determined the value of the 7 missing cows, we return to the accounting. The trial court determined the total gain in weight by subtracting the in-weight from the out-weight. However, no credit was given for the out-weight of the 7 missing cows. In other words, if the 7 missing cows are to be valued as "fattened cows,"

defendants argue that they are entitled to be compensated for the feed to bring them to a fattened state. As an equitable position, we agree with this argument, and therefore we add the weight of the 7 cows to the stipulated out-weight in order to compute the gross weight gained. The computation can be shown as follows:

|  |  |
|---|---|
| 690,245 | stipulated out-weight |
| + 6,195 | 7 cows |
| 696,440 | Total out-weight |
| − 480,805 | Total in-weight |
| 215,635 | gross gain in weight |
| × .20 | per lb. |
| $43,127 | gross owed to defendant on the contract |
| − $ 1,239 | value of seven missing cows |
| $41,888 | |

The final step in the accounting is the determination of the total advancements paid by Weinberg to be set off against the total amount due. The court found the total advancements to be $41,440. The defendants argue that the advancements total only $40,782 as shown by plaintiff's exhibits numbered 1 through 5. Plaintiff argues that exhibits one through five do not purport to represent the total of the advancements made. Plaintiff argues that there were two additional payments of $229 each which brings the total to $41,240. Based upon exhibit 6, defendants' own books, we find there is sufficient evidence in the record to support the trial court's findings on total advancements.

Therefore, deducting the advancements from the amount due on the contract,

|  |  |
|---|---|
| $41,888 | due on contract |
| − $41,240 | advancements |
| $ 648 | |

we conclude that Perry Brothers is owed a balance of $648.

■ The issue of the right to replevy the cattle was tried below on the basis of whether Weinberg had fully paid his obligations or whether there was an amount owing and unpaid to Perry Brothers which because of the lien statute would have given them a possessory interest in the entire herd of cattle until such time as the bill was paid or the lien was foreclosed. Therefore, it is our finding that the defendants were in lawful possession of the cattle by reason of their lien. The plaintiff having been guilty of wrongful replevin, it is our holding that he shall take nothing on his complaint. The trial court is reversed.

■ Any issue that might have been raised as to waiver of lien rights by tender or unreasonable conduct on the part of the lien holder has been waived by a failure to raise and argue it below. Pursuant to our long standing rule any argument made on appeal as to such issue has been disregarded.

■ On Count I of the counterclaim the trial court is reversed. Defendants, counter-claimants, are entitled to judgment against the plaintiff Adolph Weinberg, and the Glen Falls Insurance Company of Glen Falls, N. Y., the guarantor under the replevin bond, for the amount of $648 and interest thereon, together with defendant counter-claimant's costs on Count I of their counterclaim and for their costs in defending the wrongful replevin.

II. Weinberg cross-appealed from the judgment of the lower court which found in favor of Perry Brothers on Count II of their counterclaim for damages caused by delivery of tubercular cattle to Perry Brothers premises. The trial court as-

sessed damages in the amount of $4,690 plus the counter-claimant's costs in the action.

The facts of the counterclaim are as follows: Some time in July or August of 1962 William Perry and one of the Perry Brothers' employees picked up on two separate occasions a total of 32 head of cattle from Yorktown Dairy, a dairy operation owned by Adolph Weinberg. At the time that these cattle were transported from Yorktown to Perry Brothers property, Yorktown Dairy was under a strict tuberculosis quarantine and had been so quarantined since April 4, 1962. When the sheriff took possession of the 490 head of cattle on January 29, 1963 from Perry Brothers property it was discovered that among those 490 head there were several cows with health department tags and tattoos which identified them as having come from quarantined premises. The 490 head were tested for tuberculosis and 14 cows tested reactive. Since the cattle could be immediately traced to Perry Brothers feedlot the health department placed a quarantine over the Perry Brothers property. Where tubercular reactive cattle can be traced to certain premises, it is the procedure in Arizona that said premises be quarantined and so held until the remaining cattle shall be tested and shown to be negative reactors and the premises thoroughly cleaned. The damages sought by the counterclaimants are for their costs incurred in complying with the health department regulations.

The cross-appellant Weinberg assigns error in the judgment, alleging insufficient evidence to support the findings on the following particulars:

1. Weinberg asserts that there is a total failure of proof on the issue as to whether the cattle were tubercular reactives while they were on Weinberg property.

2. Weinberg contends that the evidence shows that Perry Brothers removed the cattle from his property surreptitiously with full knowlege of the fact that the Yorktown Dairy was under quarantine and further that the record shows that the claimant transported the cattle illegally and without inspection papers. Therefore it is contended that any damages incurred are the result of claimants own wrong doing.

3. Weinberg argues that the evidence does not support the amount of the damages since there was not a showing of an official health department order to scrape the pens down and remove the manure and further because the costs as charged for the removal are unreasonably excessive.

All these questions are fact issues and are not proper subjects for appellate review unless the record is clear that the findings of fact are totally unsupported by the evidence. Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1945).

On the issue of whether the 32 Yorktown cows were unhealthy or tubercular cattle at the time of their transfer, clearly there is a conflict in the evidence. The State Veterinarian was unable to testify as to whether they were tubercular on the date of the transfer or not. The most he could say is that they had tested negative and were innoculated within a few weeks of their departure from Yorktown. Weinberg argues that it is just as likely that these cattle contracted the infection while on Perry Brothers land, as it is that they were infected at the time they left Yorktown. On this basis he argues that the claimant has failed to carry the burden of proof.

While it is true that the claimant has failed to show this fact by conclusive proof, we think there is sufficient circumstantial evidence in the record to support a finding in favor of Perry Brothers. The circumstantial evidence is this:

1. Yorktown was under quarantine at the time of the transfer.

2. Of the 490 head picked up by the sheriff, 14 showed up to be tubercular reactives and of those 12 had come from Yorktown. This means

that 12 out of 32 exposed cattle from Yorktown actually developed the disease.

3. Of the 490-plus cattle which remained on Perry Brothers land and were subsequently tested for tuberculosis, none showed up to be tubercular reactive.

The trier of fact could reasonably conclude from this evidence, albeit circumstantial, that the 12 Yorktown cattle had contracted the disease while at Yorktown and not sometime later at the feedlot.

Turning to the question of Perry Brothers knowledge of the diseased condition of the cattle and the question of their unauthorized and unlawful transportation, we again find a conflict in the evidence. Weinberg's witnesses testified that they were present when the Perry Brothers were told of the quarantine at Yorktown and told that no cattle could be transferred because of it. Other witnesses testified to what could easily be construed as Perry Brothers' scheme for the surreptitious removal of these cattle without authority from Weinberg and without inspection permits. Witnesses testified that the Perrys discussed the possibility of such a transfer by utilizing back roads on Sunday afternoons when it would be unlikely that they would be stopped for inspection. On the other hand, the Perrys testified under oath that they had no knowledge of the quarantine, and that Adolph Weinberg or his agents authorized the transfer. William Perry testified that he believed that he was being handed inspection papers by a Weinberg employee when he picked up the cattle. All of this goes to the credibility of the witnesses. There is evidence in the record to support the court's findings.

On the issue of damages, Weinberg asserts that any cost incurred in cleaning the pens and removing the manure was not incurred as a consequence of a health department order. Clearly, the record does not show that formal written orders were given. However, the testimony of the Assistant State Veterinarian whose responsibility it was to direct the quarantine, to the effect that the orders were given orally, sustains the findings of the court. On the question of hauling costs, Weinberg seeks to question the validity of the bill submitted by an independent contractor who contracted with Perry Brothers to scrape the pens, haul the manure to other Perry Brothers land and spread it for fertilizer, all for the contract price of $1.00 per ton. Weinberg has not shown what the reasonable cost of such services should have been, nor has he established a basis for not regarding the bill as proper evidence.

Therefore, we hold that the judgment of the trial court is affirmed as to Count II of the defendant's counterclaim and judgment and costs shall be entered accordingly.

STRUCKMEYER, V. C. J., and UDALL, J., concur.