482 P.2d 875

**ARITEX LAND COMPANY, Inc., an Arizona corporation, and Irving L. Baker, Appellants,**

v.

**Leslie N. BAKER and Joy Baker, husband and wife, and Joy Baker, as Guardian of the Estate of Jeffery Martin Baker, a minor, Appellees.**

**No. 2 CA–CIV 922.**

Court of Appeals of Arizona,
Division 2.

March 18, 1971.

Rehearing Denied April 13, 1971.

Review Denied May 11, 1971.

Silverstone & Stern by Maurice M. Stern, Tucson, for appellants.

Bilby, Thompson, Shoenhair & Warnock, P. C. by Marvin S. Cohen, Tucson, for appellees.

HOWARD, Judge.

This appeal is the culmination of litigation between two brothers which was commenced approximately three years ago. Since both procedural and substantive questions are involved in this appeal, a detailed recitation of the chronology of events in the trial court are necessary.

In 1967 and 1968, the appellees filed three complaints in Superior Court. The first,

cause No. 103042, was a suit by the appellee-wife, as guardian of the estate of Jeffery, a minor, to obtain (1) a record transfer of 2,500 shares of Aritex capital stock to Joy as guardian, and (2) an examination of the corporate books and records. This complaint was later amended to add an alternative count for recovery of $51,200, an alleged loan which the guardian had made to the appellants in February, 1965. At the subsequent pretrial conference, the first count was withdrawn and at trial the amount was amended to $57,598.13.

The second complaint, cause No. 106209, was filed by Leslie and Joy Baker against the appellants to establish that they were the owners of 50% of the outstanding capital stock of Aritex, to prevent appellant Baker from wasting the assets of the corporation, for contribution from appellant Baker for Leslie Baker's expenditures in connection with jointly owned property and for recognition of Leslie Baker's one-half ownership of certain real property held in the name of Irving Baker.[1] This complaint was later amended to allege a joint venture between Irving and Leslie for the purpose of acquiring and financing Aritex and managing and disposing of the assets of Aritex at a profit and a breach thereof by Irving. The relief sought was an accounting of the proceeds and net profit of Aritex, imposition of a constructive trust and establishment and enforcement of a lien for contribution from Irving for Leslie's expenditures in connection with real property held in trust by Transamerica Title Company for Irving and Leslie.

A third suit, cause No. 107207, in which Leslie and Joy sought to have set aside certain transfers and conveyances, resulted in a judgment in their favor in February, 1969. The merits of this case are not involved in the subject appeal, the time for appeal having expired.

All three cases were consolidated for all purposes. After numerous re-settings of the trial date, trial was set for July 1, 1969.[2] On June 29, 1969, Irving sustained a heart attack and his counsel moved for a continuance. On July 3, 1969, medical testimony was presented in support of the motion. The substance of the medical testimony was that Irving could resume almost-normal activity within six to eight weeks from the date of the attack, that the strain of litigation could have been a significant contributing factor to the heart attack, and that if Irving were to undergo the same pressures after recovery from this attack, he would be even more likely to have another heart attack. Leslie testified that on previous occasions, financial or emotional pressures had caused Irving's physical breakdown and that a trial delay would cause him irreparable harm because of his precarious financial situation.

Further hearing on the continuance request was postponed to July 11th, at which time evidence was presented that Irving had attempted to fire his attorney, that he had made several telephone calls with respect to business, including a 16-minute long distance call from the intensive care unit, that he had been walking in his room and hospital corridors, smoking, and going to the cafeteria to eat a few days prior to the date of the hearing. The court ordered the trial to commence on July 15, 1969.

Just prior to trial, Irving's counsel again moved for a postponement of the trial and requested leave of court to withdraw as counsel for the reason that he had been fired by Irving. The court refused to permit counsel to withdraw and the trial commenced. It continued through August 6, 1969,[3] on which date Irving's counsel moved

---

1. In the interest of brevity, the parties hereinafter shall be referred to as Aritex, Leslie, Joy and Irving.

2. The record is replete with instances of delays occasioned by appellants' failure to produce documents and respond to interrogatories submitted by appellees.

3. Irving's counsel received daily transcripts of the testimony in order to go over the testimony with his client at the hospital. On August 1st, Irving was released from the hospital and traveled to Los Angeles.

to continue the trial until August 25th. The motion was granted and although the trial technically resumed on August 25th, settlement negotiations consumed several days so that actually formal resumption did not occur until September 4th. On September 9th, Irving's counsel again moved for a continuance on the ground that Irving was in Los Angeles under the care of a California physician. The court denied the motion with leave to Irving to cause himself to be re-examined by the Tucson physician who had previously testified in July and to re-apply for a continuance when the Tucson doctor was available to testify as to Irving's condition. Irving visited the Tucson doctor on September 16th and on September 17th, appellees rested their case. Irving made no further motions for continuance.

On September 18, 1969, the parties signed a memorandum of settlement in open court. Before signing, Irving testified that he had full authority to sign on behalf of Aritex and that he would travel to Los Angeles to obtain the signature of his mother, Frances Baker. On September 24th, Irving returned to court with his mother and the final agreement was signed by all parties in open court.

On December 23, 1969, Leslie and Joy filed a motion for judgment enforcing the settlement agreement. After a series of hearings thereon, the court denied the motion on January 14th and ordered that trial be resumed on January 19th. Leslie and Joy, on January 16th, requested leave to file a supplemental complaint seeking, in the alternative to the relief sought in the original complaint, damages for breach of the settlement agreement. There being no objection by Irving's counsel,[4] leave was granted. The supplemental complaint was later amended, on stipulation of counsel, to permit assertion of alternative remedies, rescission or damages.

After a series of trial postponements, various discovery procedures, unsuccessful motions by Irving to dismiss the original complaints and an unsuccessful application by Irving to this court for a special action, the trial finally resumed on May 19, 1970.

Leslie and Joy presented their case with respect to the claim set forth in the amended supplemental complaint, to-wit, breach of the settlement agreement. Just prior to resting their case, they renewed a motion, previously denied at pretrial, to set the order of trial so that it was limited to the issues joined by the amended supplemental complaint and answer thereto. Irving and Aritex moved, without objection, to dismiss some of their affirmative defenses to this claim, defenses essentially directed to voiding the settlement agreement. These defenses were ordered stricken by the court, and again Irving moved to dismiss the original complaints or the amended supplemental complaint. These motions were denied and the court granted appellees' motion with respect to the order of trial.[5] Aritex and Irving presented their case with respect to the breach of contract claim. On June 23, 1970, the court rendered judgment in favor of Leslie and Joy on the amended supplemental complaint, awarding them damages for breach of the settlement agreement, and dismissed the original complaints. No findings of fact and conclusions of law were made, neither party having requested same. Aritex and Irving objected to the form of judgment, moved to alter or amend it, and also moved for a new trial. The court granted them leave to file a proposed amended judgment by a specified date,

---

4. The attorney who represented Irving and Aritex in the prior proceeding had been granted leave to withdraw and other counsel was substituted with Irving's consent.

5. The court ordered at the conclusion of all evidence as to the breach of the settlement agreement, it would decide whether the appellees were entitled to rescission or damages. If it decided they were entitled to damages, there would be no further evidence as to the antecedent claims. If, however, it decided that rescission should be granted, appellants could offer evidence in defense of the antecedent claims, and appellees could offer rebuttal evidence thereon, and judgment would be on the issues joined by the antecedent complaints and answers thereto.

which was not done, whereupon all motions were denied and this appeal followed.[6]

The settlement agreement, breach of which formed the basis for the damages award, dealt with and resolved all the pending Baker family differences, including disputes which had arisen from the probate of the Estate of Harry J. Baker, the litigants' deceased father. During the period from 1963 to the time the agreement was executed, a domiciliary probate in Massachusetts and an ancillary probate in Pima County, Arizona, were pending. Leslie, Irving and Simon Queen, a Boston attorney, were co-executors in both. The only asset remaining in probate was El Rancho Diablo, located in Pima County, Arizona. Simon Queen was seeking funds from his co-executors to pay creditors in Massachusetts and Leslie had a substantial claim in the ancillary probate for reimbursement for sums expended by him to preserve and maintain the ranch. In 1968, Frances Baker had deeded to Aritex her interest in the ranch.

The following are pertinent provisions of the agreement. The equity in a note executed by one Mary West to Aritex [7] was to be transferred to Southern Arizona Bank at par in partial payment of the aggregate indebtedness of the parties and of the Estate of Harry J. Baker. Southern Arizona Bank would be given a first mortgage on the El Rancho Diablo property, it would advance to Irving and Leslie an additional sum of at least $125,000 (hopefully $150,000) and a new note signed by Irving, Leslie and Joy would be given to the bank to cover the amount remaining on previous indebtedness and additional advances. The entire indebtedness was to be on a long-term amortization. It was specifically agreed that in the event the parties were unable to consummate the aforesaid transactions, the settlement agreement would be null and void and the trial of the various pending actions would resume forthwith. Mary West and Charles D. McCarty, a Tucson attorney, where authorized to negotiate the settlement with Southern Arizona Bank on behalf of Irving and Aritex, and in the event the bank accepted such settlement, to assign to the bank West's note and to mortgage to the bank El Rancho Diablo.

The proceeds of the new bank loan were to be used to pay Queen and the Massachusetts creditors of the Estate of Harry J. Baker, for ranch operating expenses and repairs and the balance was to be divided equally between Irving and Leslie.

Irving acknowledged in the agreement that he owed Leslie $190,000 subject to the possibility of adjustments within a year upon written request of either and to possible arbitration if they couldn't agree on adjustments. Although the agreement provided that the sum of $50,000 cash was to be paid by Irving to Leslie upon execution. of the memorandum agreement, the parties subsequently stipulated that this sum would be paid if a commitment was obtained from Southern Arizona Bank as delineated in the agreement. The balance was to be secured by assignments to Leslie of Irving's beneficial interests in certain trusts and Irving was to return from Aritex to himself the trust interest he had previously transferred to Aritex.

Leslie and Irving agreed to pay Frances Baker a guaranteed annuity of $300 per

---

6. As damages for breach of the settlement agreement of September 24, 1969, the judgment awarded: (1) The sum of $155,203.08, together with interest thereon from date of judgment, to Leslie and Joy from Irving. (2) The sum of $401.-154.65, together with interest thereon from January 15, 1970, and the sum of $875.-00, together with interest thereon from the date of judgment, to Leslie and Joy from Aritex and Irving, jointly and severally. (3) The sum of $28,799.07, together with interest thereon from February 23, 1965, to Joy, as guardian of the estate of Jeffery, from Irving and Aritex, jointly and severally.

7. Mary West was the purchaser of the Aldwell Ranch, located in Texas which was an asset of Aritex. The total sales price was paid by assumption of underlying indebtedness of $362,107.94, $1$00,000 cash down payment, and execution of a note to Aritex for the balance of $747,254.

month each, totalling $7,200 per year and Leslie agreed to pay her an additional sum of $3,125 within two years. In addition, they agreed to pay her such sums she might require to defray unusual and necessary expenses.

El Rancho Diablo was to be conveyed to Leslie and Irving as tenants in common. Leslie was to manage the ranch which was not to be sold for less than $250,000. Various provisions provided for contingencies in the event of disagreement between Leslie and Irving as to the ranch property. Leslie and Irving also agreed to partition their land holdings, upon the request of either, by agreement or in the event of failure to agree, by arbitration. They agreed to jointly assume and discharge (1) the indebtedness of $57,598.13 plus interest to Joy, as guardian of Jeffery, (2) other potential indebtedness in undetermined amounts to certain designated individuals and (3) income taxes payable by Aritex arising from the sale of the Aldwell Ranch.

The signatories to the agreement were Frances Baker, Leslie and Joy Baker, Irving Baker, for himself individually and as president of Aritex. The agreement recited mutual releases of each other and the Estate of Harry J. Baker from all claims in consideration of the settlement and its consummation. Leslie disclaimed any interest in Aritex other than the right given him by the agreement. Leslie and Irving agreed to cooperate in an attempt to negotiate with Union Bank to restructure their respective indebtedness to it upon terms they believed they could meet.

A detailed recitation of the post-settlement occurrences would serve no useful purpose. Suffice it to say that a commitment was obtained from Southern Arizona Bank and $50,000 was delivered to Leslie as per the parties' stipulation. After consummation of the arrangement with Southern Arizona Bank, an agreement was worked out with Queen (incorporating certain suggestions of Irving) wherein he agreed to accept $40,000 to pay off the Massachu-

setts creditors and his claims for legal and administrative fees. Restructuring of the Baker indebtednesses to the Union Bank, as contemplated by the settlement agreement, was also accomplished. All of the requirements with respect to issuance of a first mortgage on El Rancho Diablo which were within Leslie's power to fulfill were accomplished.

The commitment from Southern Arizona Bank required a closing before the end of 1969. By the middle of December, the various actions and agreements needed from third parties in order to consummate and implement the settlement agreement had been obtained—the only remaining actions were on the part of Irving, for himself and on behalf of Aritex. As the end of the year approached without execution of the documents necessary to the closing by Irving and Aritex, the appellees filed the motion for enforcement of the agreement. On December 30, 1969, Irving and his new attorney met with Leslie and his attorney to try to work out any problems they had with the forms of documents required for closing. However, at that meeting, Irving indicated that he wanted substantial changes in the agreement before he would perform. At the very last minute, Southern Arizona Bank agreed to an extension of the closing date to January 15, 1970. Negotiations between the parties continued with Irving presenting new demands. No supplemental agreement was ever reached, the appellees' motion for specific enforcement was denied on January 14th, and the settlement agreement was never consummated.

Appellants have set forth 32 questions for review in their brief which they categorize as follows:

"1. Failure of Court to postpone the trial on the antecedent debt after the serious heart attack of Irving Baker.

2. 'Procedural' irregularities depriving Appellants of a fair trial.

3. Substantive errors during the trial on the Supplemental Complaint."

## FAILURE OF COURT TO POSTPONE THE TRIAL

■ Appellants contend that when the trial court refused to grant a continuance, when Irving Baker sustained a heart attack, "the denial of this Motion was the single most important decision of the Court outside the Judgment" for the reason that "there could be no other outcome of the antecedent debt case but judgment or settlement." They concede that a motion for continuance is addressed to the sound discretion of the court but maintain that this discretion was abused in that Irving's presence was indispensable for the defense and that without his presence, "there was only two choices left to the defense, an adverse Judgment or an adverse settlement."

It would thus appear that the thrust of appellants' argument is that the settlement agreement was the product of duress. If such be the case, appellants are precluded from urging a defense on appeal which they abandoned at trial. Carrasco v. Carrasco, 4 Ariz.App. 580, 422 P.2d 411 (1967); Builders Supply Corporation v. Shipley, 86 Ariz. 153, 341 P.2d 940 (1959); Perry Brothers v. Weinberg, 105 Ariz. 406, 466 P.2d 11 (1970).

■ However, we are of the opinion that the trial court did not abuse its discretion in refusing to postpone the trial. The record reflects numerous delays occasioned by Irving in the pretrial stage of the proceedings. Medical testimony indicated that a postponement might serve no useful purpose other than to delay trial *ad infinitum* since the pressures of pending litigation would most likely precipitate another heart attack. This testimony, coupled with the fact that Irving saw fit to jeopardize his condition by smoking, walking around and conducting business in the hospital, fortifies the trial court's conclusion that the equities of the situation did not justify postponement. An excellent discussion of the factors to be considered in passing upon a motion for continuance on the ground of illness may be found in an annotation on the subject. See 68 A.L.R.2d 470. It is apparent from the record in this case that the trial court weighed all the relevant factors, after extensive inquiry, and was not arbitrary in denying a continuance. We thus find no error in the ruling.

## "PROCEDURAL" ERRORS

■■ Appellants complain that the trial court erred in refusing to dismiss the original complaints after allowing the filing of the supplemental complaint. Rule 15(d), as amended, A.R.C.P., 16 A.R.S., provides in part:

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading, sought to be supplemented."

Our Supreme Court in the recent case of In re Estate of Silva, 105 Ariz. 243, 462 P.2d 792 (1970), held that the trial court erred in *denying* leave to amend a pleading to add a count which would allege compromise and settlement and to ask for judgment for breach of the settlement agreement. The court stated:

"R.C.P. 15, 16 A.R.S., provides that leave to amend shall be freely given. There can be no reason to deny such amendment, in the absence of surprise or a delay in the trial caused by untimeliness of the request. R.C.P. 18 provides that claims of nearly every kind may be joined, where they do not involve different parties. There is no reason why contestants' amendment should not have been permitted." 105 Ariz. at 248, 462 P.2d at 797.

It appears from the record that the trial court was of the opinion that the settlement agreement was a mere executory accord, without satisfaction and therefore constituted no bar to the enforcement of the original claim. He was correct in this respect. See 1 Am.Jur.2d Accord and

Satisfaction § 47. It is true that when the parties to a pending suit compromise the cause of action, *and the terms of the compromise are complied with* the parties are bound by the agreement and the suit is ended. 15A C.J.S. Compromise and Settlement § 22, page 221. Here, however, the terms of the compromise had not been complied with.

Nor do we find any merit in appellants' argument that the trial court should have required appellees to make an election as to whether to proceed on the original complaint or on the supplemental complaint. An election of remedies is the choice of one of two or more co-existing remedial rights where such rights arise out of the same facts. 28 C.J.S. Election of Remedies § 1. The doctrine of election of remedies, that the pursuit of one remedy will exclude the pursuit of another, applies only to those cases in which the party has two or more remedies which are inconsistent with each other but does not require election between distinct causes of action arising out of separate and distinct facts. Ibid. § 3(b), page 1065. It therefore has no application here where the claims for relief arose out of separate and distinct facts. We are unimpressed by appellants' argument that they were "forced to a waiver of defenses of fraud, duress and undue influence" as the record clearly reflects a voluntary dismissal of these defenses as a matter of trial strategy.

Appellants also claim that it was error for the court to set the order of trial so that evidence was taken on the supplemental complaint first, i. e. they were required to defend the breach of agreement claim before defending as to the original complaints. The trial court has broad discretion in this respect, Ulan v. Richtars, 8 Ariz.App. 351, 446 P.2d 255 (1968), and we see no abuse thereof in the case at bench. If, at the conclusion of the breach of agreement trial, the appellees were entitled to relief, further proceedings would be unnecessary. The trial court is to be commended, rather than condemned, for seeking to accomplish an expeditious resolution of this controversy.

## "SUBSTANTIVE" ERRORS

Appellants contend that Irving cannot be held personally liable for breaching the agreement, in particular with respect to transfer of the West note and mortgage to Southern Arizona Bank, since Aritex, and not Irving, owned the note and mortgage. However, on September 18, 1969, Irving, under oath, testified in open court that he had full authority to execute and implement the settlement agreement on behalf of Aritex. He cannot now attempt to exonerate himself from liability by saying the default was that of Aritex and not his.

Appellants argue that Frances Baker was an indispensable party to the lawsuit for the reason that she was a promissor in the settlement agreement. However, A.R.S. § 44–141 negates this contention:

"A. All parties to a joint obligation, * * * shall be severally liable also for the full amount of such obligations. An action may be brought against such parties jointly or separately, joining one or more, * * *."

They also contend that Irving's duty to perform the settlement agreement was excused for two reasons: (1) Title to El Rancho Diablo was not in Irving and therefore he could not perform the requirements of the Southern Arizona Bank transaction, and (2) Leslie's failure to pay Frances the sums due her under the agreement caused Frances to repudiate the agreement. We find no merit in this argument. The record discloses that there was no requirement for action on the part of Frances to implement the agreement with respect to the ranch property unless the parties elected to adopt an alternative means of effecting the title transfer. If the parties did not so elect, Irving was required to act and he failed to do so. As to Leslie's alleged non-performance

with respect to payments to Frances, the trial court apparently concluded, since the settlement agreement did not provide otherwise, that Leslie's performance was not required until closing.[8]  There being evidentiary support for this conclusion, we find no error.

■ Aritex belatedly complains that there is no consideration for its promise and therefore, as to it, the agreement is not binding.  We decline to consider the dubious merits of this defense in view of appellants' voluntary dismissal of it.  Carrasco v. Carrasco, supra.

■ It is argued that the settlement agreement was void since the parties had to go "three ways" from the agreement— settle with Queen, settle with Union Bank, and settle with Southern Arizona Bank, and only the Union Bank claim was settled. We do not subscribe to appellants' construction of the settlement agreement.  The memorandum of settlement specifically recites:

> "* * * the parties acknowledge that they have settled their differences, and this memorandum is intended to establish guidelines for the consummation of the settlement agreed upon."

The memorandum goes on to recite the transactions which they agreed to accomplish with respect to Southern Arizona Bank.  The following provision is inserted after these recitals:

> "e) In the event the parties are unable to consumate [sic] the transactions above referred to this agreement shall be null and void and the trial of the various actions will resume forthwith."

The record reflects that the parties, by insertion of the foregoing provision, intended that the parties be relieved of performance of the settlement agreement *only* in the event that an agreement could not be reached with Southern Arizona Bank.

It was not intended to relieve any of the parties of their respective duties under the agreement.  Since the agreement with Southern Arizona Bank was effected, the condition which permitted avoidance did not occur and the agreement was binding upon the parties.

■ Appellants attempt to challenge the validity of the agreement with Southern Arizona Bank on the grounds that it did not constitute the joint act of both agents who were authorized to act in their behalf and that one agent exceeded his authority by departing from the guidelines set forth in the settlement agreement. The trial court apparently concluded otherwise and our examination of the record convinces us that there was evidentiary support for such conclusion.  Although formal meetings and conferences with Southern Arizona Bank were attended by only one of the joint agents, the record reflects that both agents discussed the terms of the initial agreement, the changes to be made, and agreed to the terms of the final commitment.  Under these circumstances where the agents acted jointly in the arrangement, it was not inappropriate for just one to have been delegated the task of conducting the formalities. Restatement (Second) Agency, § 41 comment a.  As to the agent's purported departure from authority, appellants point to the fact that the settlement agreement provides for a 20 year amortization period whereas the agreement consummated with Southern Arizona Bank provided for only a 15 year amortization.  The provision of the settlement agreement with respect to the agents' authority is couched in broad language, i. e., to negotiate for settlement. However, assuming there was a "departure", as contended by appellants, we believe it was merely *de minimis,* since the ultimate result was equally if not more beneficial to the parties.[9]

---

8. The record is replete with testimony to the effect that the parties contemplated "one ball of wax."

9. They obtained a loan of $150,000 instead of only $125,000 at 7% interest, and payments of principal were suspended for the first two years.

Furthermore, assuming arguendo that appellants are correct, the evidence reflects conduct on the part of Irving from which ratification can be inferred. McCarty and West by the terms of the settlement agreement were authorized to negotiate for the settlement with Southern Arizona Bank of all pending claims by the assignment of the West note at par value and an advance of at least $125,000 by the bank. We agree with appellants that, as a general rule, the doctrine of ratification is founded upon the fact of knowledge of all the material facts. O'Neil v. Goldenetz, 53 Ariz. 51, 85 P.2d 705 (1938); See—Tee Mining Corporation v. National Sales, Inc., 76 N.M. 677, 417 P.2d 810 (1966); Film Enterprises, Inc. v. Selected Pictures, Inc., 138 Colo. 468, 335 P.2d 260 (1959).

Here there was testimony that Irving had telephone conversations with both West and Leslie concerning the Southern Arizona Bank commitment. He paid the $50,000 due to Leslie upon consummation of the commitment, corresponded with McCarty with respect to the Queen settlement and participated in the restructuring of the Union Bank indebtedness. All of these acts, which were not required until the settlement with Southern Arizona Bank was effected, are consistent with satisfaction with the bank settlement. Such conduct, showing apparent approval, would support a finding that Irving acquiesced in the agents' arrangement with Southern Arizona Bank, even in the face of Irving's denial. Little v. Brown, 40 Ariz. 206, 11 P.2d 610 (1932). We also note, in passing, that during the period in January, 1970, when the parties attempted to resolve their differences, no question was raised by Irving as to the amortization period which militates against a belated contention that his agents exceeded their authority.

Appellants additionally contend that the settlement agreement was not enforceable since it was an agreement to make future agreements and was lacking in definiteness and certainty. The parties agreed to settle with Southern Arizona Bank, the Union Bank, and Simon Queen. The pertinent provisions with respect to these settlements are as follows. As to the Union Bank:

"12. Irving and Leslie Baker agree that they will cooperate in an attempt to negotiate with Union Bank as to their respective indebtednesses so as to restructure the indebtednesses upon terms which they believe they can meet. * * *."

As to the Queen matter, the settlement agreement provides:

"The amount of cash received from Southern Arizona Bank shall be used as follows:

a) For the settlement of all claims of Simon Queen and Massachusetts creditors against the Estate of Harry J. Baker."

The provision with respect to Union Bank imposed an obligation on Leslie and Irving to *attempt* to arrange terms with respect to their respective indebtednesses. Failure to accomplish this "restructuring" did not relieve either one of their respective obligations under the agreement.

As to the Queen settlement, the agreement is not lacking in definiteness.

Appellants further attack the settlement agreement on the ground that it did not provide for the form of the closing documents to be used in consummating the various transactions. We do not believe that the settlement agreement was rendered unenforceable because of such omission. Absent a provision to the contrary, it would be presumed that the documents were intended to contain provisions that are customary in such documents. Burrow v. Timmsen, 223 Cal.App.2d 283, 35 Cal.Rptr. 668 (1963).

Appellants make much of the fact that the memorandum of settlement does not indicate to which Southern Arizona Bank debts the West note was to be applied. However, the bank commitment supplies the requisite details.

During the December, 1969 hearings, the court requested the parties to negotiate for settlement. At trial, appellees were permitted to introduce into evidence a writing given to them by Irving with respect to these negotiations. Appellants contend that the writing should have been excluded by the court since it was an offer to compromise. Although as a general rule, settlement negotiations are not admissible in evidence, if, as here, they are admissible for some other legitimate purpose, the rule does not apply. See Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262 (1952); Truck Insurance Exchange v. Hale, 95 Ariz. 76, 386 P.2d 846 (1963). We find no error since the exhibit was properly admitted to show that Irving intended to breach the settlement agreement. We also summarily reject appellants' contention that it was improper to permit proof that they had breached the Southern Arizona Bank agreement. Although the pleadings merely allege breach of the September 24th settlement agreement, a portion thereof requires performance of the Southern Arizona Bank agreement, if consummated. The probata correspond to the allegata.

The memorandum of settlement recites the parties' agreement that Irving owed Leslie $190,000 (as noted above, $50,000 had been paid to Leslie), but that the amount might change if certain conditions occurred, namely, a written claim of adjustment followed by arbitration if the claim was not accepted. Since Irving breached the agreement, he himself prevented the occurrence of the condition which would permit reduction of this amount and is therefore foreclosed from claiming a right to adjustment.[10]

We decline to consider appellants' objections with respect to the form of judgment and to the filing of a supplemental complaint. As to the judgment, they did not avail themselves of the opportunity afforded by the trial court to file an amended judgment. As to the supplemental complaint, no objection was made in the trial court. We therefore deem these objections waived.

Appellants' final contention is directed to the trial court's permitting attorney McCarty to respond to a question as to whether he had been authorized by appellants to execute certain documents. An objection was made, which was overruled by the trial court, that the question was violative of the attorney-client privilege. We agree with the trial court's ruling that the attorney could testify as to his authority to settle, since such communication is not within the pale of protection. Koeber v. Somers, 108 Wis. 497, 84 N.W. 991 (1901); 97 C.J.S. Witnesses § 287; 58 Am.Jur. Witnesses § 509.

In summary, we reject appellants' contention that "the trial of this matter is riddled with procedural and substantive error depriving Appellants of a fair trial." Our examination of the record leads to the inescapable conclusion that the trial judge afforded them every opportunity to explore and develop their theory of the case. In fact, we feel constrained to commend the trial judge for his admirable display of patience which resolution of this intra-familial dispute required.[11]

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

---

10. Leslie and Joy were awarded, as part of their damages, the sum of $190,000 less the $50,000 already paid.

11. The actual trial, apart from the numerous hearings on motions, consumed some 31 days prior to the settlement agreement. The trial on the supplemental complaint lasted an additional 12 days. The exhibits were both numerous and voluminous.